**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

**v.**

**Charles Allen GARRISON,**
**Defendant–Appellant.**

**No. 01CA0527.**

Colorado Court of Appeals,
Div. I.

Oct. 7, 2004.

Certiorari Denied April 18, 2005.

Ken Salazar, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

MARQUEZ, J.

Defendant, Charles Allen Garrison, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree murder after deliberation and using a deadly weapon. We affirm.

Defendant was contacted by police in the mountains west of Denver in March 1999 for reasons unrelated to the murder. After driving his car into a ravine, defendant was medically treated for self-inflicted knife wounds and issued a summons for traffic charges.

Six days later, police officers in Aurora discovered the victim's partially decomposed body. Evidence was presented at trial that the victim died of two knife wounds inflicted during a time that included defendant's first police contact.

Defendant was charged with first degree murder and mandatory sentencing for a crime of violence. During trial, the court admitted over defendant's objection certain hearsay statements made by the victim. Upon conviction, defendant was sentenced to life imprisonment without possibility of parole.

I.

Defendant contends that the trial court erred in admitting hearsay statements made by the victim to a training manager on February 21 and March 8, 1999. We disagree.

A.

After we issued our first unpublished opinion in this appeal, the United States Supreme Court announced *Crawford v.*

*Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In his petition for rehearing, defendant submits that *Crawford* requires reversal. We are not persuaded.

In *Crawford,* the defendant's wife made statements to the police. The trial court determined that the wife was unavailable and admitted her statements after finding them to be trustworthy under *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Supreme Court reversed and held that admission of the wife's statements violated the defendant's confrontation rights. The Court explained that where testimonial hearsay evidence is at issue, the Sixth Amendment demands unavailability and a prior opportunity for cross-examination.

Defendant here contends in his petition for rehearing that the statements fall within the proscription against testimonial hearsay. The People respond that the statements in this case were not testimonial in nature and therefore their admission was not barred by the Confrontation Clause. We agree with the People.

In *Crawford,* the Supreme Court left for another day any effort to spell out a comprehensive definition of "testimonial." According to the Supreme Court, whatever else the term covers, it applies at a minimum to police interrogations and to prior testimony at a preliminary hearing, before a grand jury, or at a former trial.

Defendant concedes that the present case does not involve statements made to a grand jury, at a preliminary hearing, or in response to police interrogation. The record reflects that the statements at issue here were not in the "core class" of testimonial statements suggested in *Crawford,* such as affidavits, depositions, prior testimony, confessions, or statements that would lead an objective person reasonably to believe that the statements would be available for use in a later trial. *Crawford v. Washington, supra,* 541 U.S. at 51, 124 S.Ct. at 1364.

Nothing in the record indicates that the victim's statements to the training manager would constitute testimonial hearsay. The statements were not made to the police, and there is no indication that the manager was acting as a police agent. Thus, we conclude that *Crawford* does not apply here.

### B.

■ We disagree with defendant's assertion that the February 21, 1999 statements do not qualify for admission under the hearsay exception for excited utterances.

Unless an exception or exclusion applies, a hearsay statement is not admissible. CRE 801, 802. An excited utterance is an exception to the hearsay rule and is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2); *People in Interest of O.E.P.,* 654 P.2d 312 (Colo.1982).

■ The trial court is in the best position to consider the effect of a startling event on the declarant; thus, it is afforded wide discretion in determining admissibility under the excited utterance exception. *People v. Martinez,* 18 P.3d 831 (Colo.App.2000); *Canape · v. Peterson,* 878 P.2d · 83 (Colo.App. 1994), *aff'd,* 897 P.2d 762 (Colo.1995). If the evidence supports the trial court's ruling, we will not disturb it. *People v. Martinez, supra.*

■ The requirements for admissibility under CRE 803(2) are: (1) the event must be sufficiently startling to render normal reflective thought processes of the observer inoperative; (2) the statement must be a spontaneous reaction to the occurrence; and (3) direct or circumstantial evidence must exist to allow the jury to infer that the declarant had the opportunity to observe the startling event. *People v. Martinez, supra.*

Here, evidence was presented at the motions hearing that the victim received approximately fifteen phone calls within a one-hour period at the fast-food restaurant where he was employed. The victim would slam the phone down to end the calls, and the phone would ring again a few seconds later. The victim's training manager, who was present during the calls, observed that the calls made the victim very upset, angry, and extremely emotional, and resulted in the victim using obscenities. The training manager overheard the victim saying "It's over. Do

whatever you have to do." The training manager asked the victim what was going on, and the victim replied that an old friend of his was calling and threatening to kill him.

The court ruled that the statements were material to the victim's state of mind, were "classic res gestae," and had some bearing on the question of identity. Defendant does not challenge these findings. The trial court also held that the statements made by the victim both on the phone or after hanging up the phone were admissible either as excited utterances or spontaneous sense impressions under CRE 803(1)-(2).

Defendant argues in his brief on appeal that the statements made by the victim during and after the phone calls were not excited utterances because the series of calls was not a startling event. However, the record supports the trial court's conclusion that the victim was "extremely excited and mad" and had "no time to reflect on his statements that were made under stress." *See United States v. Martin,* 59 F.3d 767 (8th Cir.1995)(declarant's statement that the defendant would burn down his house was admissible as an excited utterance where declarant made statement after receiving threatening phone call and in response to witness's asking what was wrong); *United States v. Vretta,* 790 F.2d 651 (7th Cir.1986)(declarant's statement to witness that party had threatened to kill him during phone call admissible as excited utterance).

■ Nor do we agree with defendant's argument that the statement made after the phone call was not spontaneous because it was made after the training manager asked what was going on. The fact that the statement was made in response to a question does not preclude it from being an excited utterance. *See People in Interest of O.E.P., supra; People v. Martinez, supra.*

### C.

■ We also reject defendant's contention that the trial court erred in admitting the March 8, 1999 statements made by the victim to the training manager. To the extent defendant continues to assert that these statements were not accompanied by particular-

ized guarantees of trustworthiness sufficient to satisfy the requirements of CRE 804(b)(5) and the right to confront and cross-examine witnesses under the United States and Colorado Constitutions, we disagree.

Here, at the motions hearing, the training manager testified that he and the victim had a discussion on March 8 about the February 21, 1999 events. When the manager noticed that the victim's behavior and work habits were different from normal, he asked the victim what was wrong. The victim asked the manager whether he remembered the guy that was calling him a couple of weeks earlier. The manager indicated that he did, and the victim said, "Well, he's coming here from California to kill me."

In ruling that the statements were admissible under CRE 807, the residual hearsay exception, the trial court found that these statements were a continuation of the February 21 statements, the victim had no motive to lie, and the statements were offered as evidence of a material fact. The court also viewed them as an excited utterance and present sense impression. The court added that the statements were material to identity and that their relevance outweighed any prejudice.

■ We note at the outset that the residual hearsay exception is not a firmly rooted exception, *see Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), and thus particularized guarantees of trustworthiness are required for statements to satisfy the Confrontation Clause under this exception.

Defendant concedes that in some sense the statements were a continuation of the February 21 statements, that materiality and notice are not questioned, and that, if believed, the statements were highly probative. However, defendant contends that the victim had a motive to lie. He argues that like any subordinate "called to the carpet," the victim was motivated to make up an excuse for his poor performance that day. We conclude the evidence does not support this assertion.

The training manager testified that, after noticing the victim was short tempered and irritated, he asked the victim whether he was

okay. The record does not suggest that the training manager directly addressed or confronted the victim about his performance that day. Rather, the training manager only encouraged him to do something about the threats. The victim's own reference to the previous statements supports a conclusion that the statements were voluntary and made from the victim's personal knowledge.

Therefore, we conclude that the trial court did not abuse its discretion in admitting these statements.

### D.

Defendant nevertheless contends in his petition for rehearing that to the extent *Roberts* was overruled by *Crawford,* the "particularized guarantees" test is no longer valid and Colorado's "residual hearsay" exception is a violation of the Confrontation Clause of the Sixth Amendment. We disagree.

Prior to *Crawford,* the Confrontation Clause permitted the admission of hearsay evidence only if the prosecution demonstrated that the declarant is unavailable to testify and the declarations either fall within a firmly rooted hearsay exception or bear particularized guarantees of trustworthiness. *Cf. Ohio v. Roberts, supra; People v. Dement,* 661 P.2d 675 (Colo.1983).

The Supreme Court in *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374, stated: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether."

In *People v. Compan,* 100 P.3d 53, 2004 WL 1123526 (Colo.App. No. 02CA1469, May 20, 2004), a division of this court held that it would apply the *Roberts-Dement* test to determine whether the admission of nontestimonial hearsay comports with the requirements of the state constitution. *Accord People v. Vigil,* 104 P.3d 258, 2004 WL 1352647 (Colo.App. No. 02CA0833, June 17, 2004).

In *People v. Fry,* 92 P.3d 970, 976 (Colo. 2004), the supreme court held:

In light of *Crawford,* we reject the *Roberts* reliability analysis that we adopted in *De-*

*ment.* Consequently, to the extent that [*Stevens v. People,* 29 P.3d 305 (Colo. 2001)] and [*People v. Farrell,* 34 P.3d 401 (Colo.2001)] and any of our other prior cases employ that analysis, we overrule those cases. We therefore change our Confrontation Clause inquiry to whether a defendant had an adequate prior opportunity to cross-examine, not whether the previous testimony is reliable.

However, we do not read *Fry* to reject the *Roberts-Dement* reliability analysis with respect to *nontestimonial* evidence. At the outset of *Fry,* the supreme court framed the issue before it as "whether the preliminary hearing testimony of an unavailable witness is admissible at trial" in light of *Crawford. People v. Fry, supra,* 92 P.3d at 972. It noted that "*Crawford* limits its holding to 'testimonial statements.'" *People v. Fry, supra,* 92 P.3d at 976. Thus, the *Fry* opinion addresses only testimonial statements and, in our view, is similarly limited in its application.

We are persuaded by the reasoning of *People v. Compan, supra,* as to continued application of the *Roberts-Dement* test. Our resolution is supported by decisions of courts in other jurisdictions, all continuing to apply *Roberts* to Confrontation Clause analysis of nontestimonial hearsay. *See, e.g., United States v. McClain,* 377 F.3d 219 (2d Cir. 2004); *Evans v. Luebbers,* 371 F.3d 438 (8th Cir.2004); *Horton v. Allen,* 370 F.3d 75 (1st Cir.2004); *State v. Rivera,* 268 Conn. 351, 844 A.2d 191 (2004); *Demons v. State,* 277 Ga. 724, 595 S.E.2d 76 (2004); *State v. Vaught,* 268 Neb. 316, 682 N.W.2d 284 (2004).

Accordingly, we conclude that the trial court properly admitted the February 21 and March 8, 1999 statements.

### II.

■ Defendant contends that the trial court erred in concluding that the patient-physician privilege did not apply to statements he made to a nurse relating to his discharge from the hospital. We disagree.

■ "A physician, surgeon, or registered professional nurse ... shall not be examined without the consent of his patient as to any information acquired in attending the patient

which was necessary to enable him to prescribe or act for the patient ...." Section 13–90–107(1)(d), C.R.S.2003. The patient-physician privilege is a statutory creation in derogation of common law. *People v. Covington,* 19 P.3d 15 (Colo.2001). A statute in derogation of the common law must be strictly construed to limit its application to the clear intent of the General Assembly. *Gleason v. Becker–Johnson Assocs., Inc.,* 916 P.2d 662 (Colo.App.1996); *see Water, Waste & Land, Inc. v. Lanham,* 955 P.2d 997 (Colo. 1998).

Here, at the May 2000 motions hearing, the nurse testified that his involvement with defendant was limited to assisting him in finding a way home because he had come from out of state. The nurse was not involved in defendant's treatment, dispensed no medications, and acted in his capacity as a case manager. When the nurse inquired whether defendant had anyone he could talk to, defendant volunteered information about a failed relationship. Defendant said that the person with whom he had been in the relationship "could not help him at all" and that he could not go to that person "after what happened." The nurse conceded that discussion of follow-up counseling with a patient and with a doctor would be part of treating defendant, but there is no evidence in the record that any type of counseling was prescribed or that defendant's release was conditioned on any follow-up treatment.

The trial court found that in a strict sense, the statements were not medically relevant. The interview was in preparation for defendant's release from the hospital and not for the purpose of treatment or diagnosis. Strictly construing the statute, the statements were not necessary to enable the nurse to prescribe or act for defendant, and we conclude that the trial court properly ruled that the statutory privilege did not apply.

The judgment is affirmed.

Judge TAUBMAN and Judge WEBB concur.