The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jason A. KING, Defendant–Appellant.

No. 02CA0201.

Colorado Court of Appeals, Div. II.

Jan. 27, 2005.

Certiorari Denied Oct. 17, 2005.

John W. Suthers, Interim Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Casey J. Mulligan, Boulder, Colorado, for Defendant–Appellant.

TAUBMAN, J.

Defendant, Jason A. King, appeals the judgment entered on a jury verdict finding him guilty of first degree sexual assault, attempted first degree murder, and three habitual criminal counts. He also appeals his sentence. We affirm.

Following a party in December 1992, the victim, P.T., left with a man she did not know who had offered to give her a ride home. However, P.T. went with the man to an apartment in the adjacent building, where he sexually assaulted her at knifepoint. The man then took P.T. outside to the alley, stabbed her in the neck, and left her for dead. After P.T. made her way to a nearby house, police were called. Officer Christian

arrived at the scene and saw P.T. bleeding from the wound on her neck. Officer Christian stayed with P.T. for approximately two hours and accompanied her in an ambulance to the hospital. P.T. told Officer Christian that the man with whom she had left the party had sexually assaulted her and stabbed her in the throat.

Later that morning, P.T. identified defendant in a six-person photographic lineup.

After recovering from her injuries, P.T. returned to her native Belgium in 1993, but died there in 1999 of unrelated causes. Defendant was tried and convicted as charged in 2001. This appeal followed.

## I. Right to Self–Representation

■ Defendant contends that the trial court erred when it violated his right to self-representation by denying his request to proceed pro se at trial. We disagree.

■ A defendant in a criminal case has a right to self-representation under both the United States and Colorado Constitutions. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *People v. Arguello,* 772 P.2d 87 (Colo.1989).

■ Before a trial court may allow a defendant to waive his or her constitutional right to counsel and proceed pro se, the defendant must unequivocally and timely assert his or her constitutional right to self-representation. *People v. Harris,* 914 P.2d 434 (Colo.App.1995).

Here, defense counsel filed a motion to continue the trial date about three weeks before the scheduled trial. Defense counsel asserted that witnesses were difficult to find because of the age of the case and the defense needed more time to investigate the facts of the case as well as the victim's background. At a hearing on the motion the day before trial, defense counsel advised the court that he was not ready for trial and that he would be ineffective if forced to represent defendant the following day. Immediately after this statement, defendant addressed the court as follows:

> I'm begging the court to appoint conflict-free representation and to continue this matter until such time as necessary for new counsel to review this case and try to amend the blunders made by the Public Defender's Office. If this court refuses this humble plea for a fair trial, then *against my will* I'll have to proceed pro se and ask you.

(Emphasis added.)

Even if we assume that defendant's request for self-representation was timely, it was not unequivocal. The thrust of defendant's statement to the court was that he was requesting the appointment of new counsel and a continuance. Defendant then asserted that if the court denied these requests, he would have to proceed pro se against his will and ask the court for permission to do so. This statement did not constitute an unequivocal request for self-representation. Further, after the trial court denied defendant's request for appointment of new counsel and a continuance, defendant did not pursue his interest in proceeding pro se.

Under these circumstances, we conclude that the trial court did not err in denying defendant's request for self-representation.

## II. Admissibility of P.T.'s Statements

■ Defendant contends that the trial court erred when it admitted the hearsay statements of P.T. into evidence as excited utterances in violation of defendant's constitutional right of confrontation. We disagree.

### A. Excited Utterance

■ An excited utterance is an exception to the general rule that hearsay evidence is inadmissible. An excited utterance is defined as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2). A hearsay statement is admissible as an excited utterance if its proponent shows (1) the occurrence or event was sufficiently startling to render inoperative the normal reflective thought processes of an observer; (2) the declarant's statement was a spontaneous reaction to the event; and (3) direct or circumstantial evidence supports an inference that the declarant had the opportunity to observe

the startling event. *People v. Martinez*, 18 P.3d 831 (Colo.App.2000).

The trial court is afforded wide discretion in determining whether a statement is admissible under the excited utterance exception to the hearsay rule. *Martinez, supra.*

Here, the sexual assault and stabbing of P.T. constituted a startling event. *See Martinez, supra*, 18 P.3d at 835 (an assault is clearly a startling event). Regarding whether P.T.'s statements were spontaneous, the trial court made the following findings of fact:

[A]ccording to Officer Christian's testimony, [P.T.] through the ambulance ride to the hospital and even while she was at the hospital, continued to be upset concerning what had just happened to her. [P.T.] was described at some times hysterical, sometimes calm. So I'm going to find that she was, based on that evidence, that she was still under the effect of the excitement of the recent events and had not had time to reflect and fabricate a story. Rather, she was reporting what happened still under the stress and upset of the assault on her.

Although the trial court acknowledged there was no way to know how much time had elapsed between the assault and the 911 phone call, there was substantial evidence in the record that P.T. was hysterical at different times throughout the two-hour period that she made statements to Officer Christian. There was also testimony that during the two hours, P.T. continually lapsed into French while she was speaking and that she repeatedly asked whether she was going to die. Furthermore, Officer Christian testified that P.T. was bleeding badly and that P.T. was continually being examined and treated for her injuries during the time she was with her. *See People v. Compan*, 100 P.3d 533, 536 (Colo.App.2004) (*cert. granted* 2004 WL 2376474 (Oct. 25, 2004)) ("The excited utterance exception has been liberally interpreted to extend to statements made following a lapse of time after the startling event itself. There is no firm time limit because the duration of stress will obviously vary with the intensity of the experience and the 'emotional endowment' of the declarant.").

Although the court recognized the inability to determine the amount of time that had elapsed between the 911 call and the assault, the court determined that statements made by P.T. to another officer more than three hours after the police arrived at the scene were not excited utterances, because by that time, P.T. had had "enough time to reflect and gather herself."

Defendant contends that because some of P.T.'s statements were in response to questions asked by Officer Christian, the statements were inadmissible under the excited utterance exception. However, the excited utterance exception extends to statements made in response to questioning. *People v. Hulsing*, 825 P.2d 1027 (Colo.App. 1991). The circumstances surrounding the making of the statements determines whether they are spontaneous. *People v. Franklin*, 683 P.2d 775 (Colo.1984).

We conclude that the trial court did not abuse its discretion in determining that the circumstances surrounding P.T.'s statements showed that they were made spontaneously in reaction to the assault and resulting injuries. Therefore, the trial court did not abuse its discretion in finding that P.T.'s statements were excited utterances.

## B. Right of Confrontation

The accused in a criminal case has a constitutional right to confront and cross-examine witnesses against him or her. U.S. Const. amends. VI, XIV; Colo. Const. art. II, §§ 16, 25.

Prior to the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), a hearsay statement made by an unavailable witness was admissible against a criminal defendant if the statement fell within a firmly rooted hearsay exception. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). However, in overruling *Ohio v. Roberts*, the Court determined in *Crawford* that the Sixth Amendment requires that testimonial statements of an unavailable declarant in a criminal prosecution are admissible only if the defendant has had a prior opportunity to

cross-examine the declarant. *Crawford, supra; see also People v. Fry,* 92 P.3d 970 (Colo.2004). Therefore, the issue here is whether P.T.'s statements to Officer Christian were testimonial interrogation so as to render them inadmissible under *Crawford.* We conclude that the statements were nontestimonial.

Although the Court declined to specify what constitutes a "testimonial" statement, it determined that testimonial statements need not be given under oath. *Crawford, supra,* 541 U.S. at 51–52, 124 S.Ct. at 1364–65. The Court listed as examples of testimonial statements, *"ex parte* in-court testimony or its functional equivalent ... material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Crawford, supra,* 541 U.S. at 51, 124 S.Ct. at 1364; *see also Compan, supra,* 100 P.3d at 537(testimonial statements under *Crawford* will generally be solemn or formal statements).

The Court noted that statements taken by police officers in the course of interrogations are testimonial. However, the Court did not determine whether any police questioning was testimonial, other than stating that the term "interrogation" should be used in its colloquial sense, rather than any technical legal sense. *Crawford, supra,* 541 U.S. at 52, 124 S.Ct. at 1365.

There are no Colorado cases addressing the issue of whether an excited utterance made to a police officer is testimonial under *Crawford. See generally People v. Garrison,* 109 P.3d 1009, 2004 WL 2278287 (Colo.App. No. 01CA0527, Oct. 7, 2004) (excited utterance nontestimonial where statement was not in the core class of statements listed in *Crawford* and statement was not made to a government agent).

However, numerous other states have considered whether statements made under similar circumstances were testimonial interrogation and almost all have concluded they were not. *See, e.g., Rogers v. State,* 814 N.E.2d 695 (Ind.Ct.App.2004) (excited utterances made by victim after a bar fight were nontestimonial because police officer's ques-

tioning shortly after the incident was not an interrogation); *People v. Bryant,* 2004 WL 1882661 (Mich.Ct.App. No. 247039, Aug. 24, 2004) (unpublished per curiam) (excited utterances made to police officer were nontestimonial where statements were made after declarant had been shot and was in obvious physical pain); *People v. Mackey,* 5 Misc.3d 709, 785 N.Y.S.2d 870 (Crim.Ct.2004) (responses to police officers during a preliminary field investigation are not barred as testimonial statements under *Crawford* if the statements and the circumstances in which they were made lack the requisite formality to constitute a police interrogation); *Wilson v. State,* 151 S.W.3d 694 (Tex.Crim.App.2004) (excited utterances made to police officers were nontestimonial where declarant initiated interaction with officers, statements were inquisitive in nature, and statements were not made in response to tacitly structured police questioning). *Cf. People v. Denison,* 918 P.2d 1114, 1116 (Colo.1996) ("an on-the-scene investigation, or questioning which enables an officer to determine what has happened and who has been injured, is not an interrogation under *Miranda* or its progeny"). *But see Lopez v. State,* 888 So.2d 693 (Fla.Dist.Ct.App.2004) (excited utterance made at the scene of a crime does not lose its character as testimonial merely because the declarant was excited at the time it was made).

In *Fowler v. State,* 809 N.E.2d 960 (Ind.Ct. App.2004) *(transfer granted* Dec. 9, 2004), the Indianapolis police received a 911 call regarding a domestic disturbance. An officer arrived on the scene and observed blood coming from the victim's nose, as well as blood on her clothing. Shortly after arriving on the scene, the victim told the officer that her husband had punched her several times in the face.

Later at trial, the victim refused to testify regarding the incident, and the prosecution called the officer to testify regarding the victim's statements to him at the scene. The court concluded that the statements were nontestimonial and, therefore, admissible under *Crawford.* After an extensive *Crawford* analysis, the court observed that what constitutes a testimonial statement is the "official

and formal quality of such a statement." *Fowler, supra,* 809 N.E.2d at 963. The *Fowler* court further noted that "the Supreme Court [in *Crawford*] chose not to say that any police *questioning* of a witness would make any statement in response thereto 'testimonial'; rather it expressly limited its holding to police 'interrogation."' *Fowler, supra,* 809 N.E.2d at 963.

The *Fowler* court concluded that the victim's statement was nontestimonial because it was not given in a formal setting, was not given during any type of pretrial hearing or deposition, and was not contained within a formalized document. The court further concluded that the officer's questioning at the scene did not qualify as a classic police interrogation. Finally, the court concluded that the classification of a statement as an excited utterance supports the conclusion that the statement is nontestimonial in nature because it was made under the stress of the event, not with intent or knowledge that the statement might later be used at trial.

We find the analysis in *Fowler* and related cases to be persuasive and follow it here. Officer Christian arrived upon the scene to find the victim bleeding from her neck. She applied pressure to the wound, and it was necessary for her to ride in the ambulance with the victim to continue to apply pressure to stop the bleeding. Although Officer Christian remained at the hospital with the victim for about two hours, P.T. was still distressed by the assault and was in a substantial amount of pain from her injuries. P.T.'s statements were not made in a formal setting such as a police station. Nor were the statements elicited by Officer Christian in a deliberate manner to obtain incriminating evidence against defendant.

Although the statements made by the declarants in many of the above cases were made closer in time to the occurrence of the incident or crime, we note that, unlike the injuries in those situations, P.T.'s injuries were possibly life threatening. Therefore, it took an extended period of time for the doctors to stabilize P.T., which resulted in an extended period of pain and distress. The seriousness of P.T.'s injuries supports the nontestimonial nature of the statement because under such pain and distress, it is highly unlikely that P.T. or any reasonable person would make any statement with the expectation that it would subsequently be used prosecutorially.

We also agree with the *Fowler* court's conclusion that classification of a statement as an excited utterance, while not dispositive, supports a conclusion that a statement is nontestimonial. An excited utterance by definition is one made before the declarant has had an opportunity to reflect on the event. Therefore, it is consistent with the definition of an excited utterance to conclude that it is not a statement which a declarant would reasonably believe at the time it was made might later be used at trial.

The only case holding to the contrary, *Lopez, supra,* is distinguishable. There, the court concluded the victim's statements to the police regarding the defendant's involvement were testimonial. However, the defendant in that case alleged that he had been set up by the victim and the victim's employer because the day before, the defendant had reported that he had been sexually assaulted by the victim's employer. Therefore, the victim's statements to the police were much more likely to have been made in anticipation of their use at trial. Moreover, while the officers stated the victim in *Lopez* appeared nervous and upset, he had not suffered any physical injury.

Here, in contrast, there was no evidence that P.T. set up the assault to retaliate against defendant, and she was in extreme pain when she made her statements to Officer Christian.

Accordingly, we hold that where, as here, a victim makes an excited utterance to a police officer, in a noncustodial setting and without indicia of formality, the statement is nontestimonial interrogation under *Crawford.* We recognize that there may nevertheless be unanticipated circumstances, similar in nature, that would warrant a different conclusion.

■ Thus, we conclude that P.T.'s statements are nontestimonial, and therefore, *Crawford* does not apply. Nonetheless, we must determine whether such nontestimonial

hearsay satisfies the test set forth in *Roberts.* *See Compan, supra.* Because P.T. was unavailable to testify and an excited utterance is a firmly rooted hearsay exception, we conclude that it does. *See People v. Green,* 884 P.2d 339 (Colo.App.1994) (excited utterance made to police officers did not violate defendant's right to confront witnesses under *Roberts* test).

Accordingly, we agree with the trial court's conclusion that P.T.'s statements did not violate defendant's right of confrontation and, thus, were admissible.

### III.   Motion to Continue

█  Defendant contends that the trial court abused its discretion when it denied his request to continue the trial so his attorney could prepare his defense. We disagree.

█  An appellate court reviews a trial court's denial of a motion to continue a trial under an abuse of discretion standard. *People v. Dillon,* 633 P.2d 504 (Colo.App.1981). A trial court's arbitrary insistence upon a trial date may constitute an abuse of discretion and a violation of the defendant's right to effective assistance of counsel. *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *People v. Hampton,* 758 P.2d 1344 (Colo.1988).

Defendant's motion to continue was predicated on the lack of preparation of defense counsel. Specifically, defendant argued that his counsel needed more time (1) to interview a witness who had not been subpoenaed, (2) to obtain P.T.'s medical records, (3) to contact a doctor who had conducted a rape kit analysis on P.T. that came back with negative results for semen, (4) to interview a paramedic who claimed that P.T. had an odor of beer on her breath, and (5) to contact the doctor who had evaluated P.T.'s mental health on the night of the assault.

The record shows that the prosecution had turned over to defense counsel information concerning the potential witness and, furthermore, that his testimony would not have been significant. Additionally, medical records had been available to the defense for five months and could have been reviewed previously. Also, another witness testified why the rape kit analysis came back with negative results in 1992. Further, the parties stipulated that the paramedic had detected the odor of alcohol on P.T.'s breath. Finally, the record shows that the doctor in question was living in India and that contacting him would be difficult.

Accordingly, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a continuance. *See People v. Bakari,* 780 P.2d 1089 (Colo.1989).

### IV.   Sleeping Juror

█  Defendant argues that the trial court abused its discretion when it refused to replace an apparently sleeping juror with the alternate juror. We are not persuaded.

█  Jury misconduct that materially affects the substantial rights of a party so as to prevent a fair and impartial trial may serve as grounds for a new trial. *People v. Herrera,* 1 P.3d 234 (Colo.App.1999). When evaluating a claim of juror misconduct, we should not reverse the trial court's determination in the absence of an abuse of discretion, and a defendant must show that he or she was prejudiced by the alleged misconduct. *People v. Thurman,* 948 P.2d 69 (Colo. App.1997). The prejudicial effect of the alleged misconduct is a question of fact to be determined in light of all of the circumstances of the trial. *People v. Herrera, supra.*

Here, during trial, defense counsel observed that Juror B appeared to be dozing off "on a regular basis." He called this to the trial court's attention three times and, after the prosecution rested its case, requested that Juror B be replaced by the alternate juror.

Rejecting this request, the trial court found as follows:

> I have observed [Juror B] on occasion with his eyes closed [as] if he was sleepy. And other occasions he will sit with his hand over his forehead and you can't tell whether his eyes are closed. But on some of those he is vigorously taking notes, even though as you just look at his face it looks like he's nodding off or sleeping.

Since it was first raised, I have tried to watch him reasonably carefully and I don't think—there's some evidence of eyes closing on a few occasions. I don't think there is sufficient evidence that he has actually been asleep or missed substantial portions of the evidence to warrant the intrusion of either questioning him or certainly excluding him from the jury.

Based upon these findings, we conclude that the trial court did not abuse its discretion in not replacing Juror B. While it may have been the better practice to question Juror B to determine whether he thought he had been dozing off and, if so, to what extent, the trial court's observations support its conclusion that removing Juror B was not necessary.

### V. Florida Convictions Under Habitual Criminal Statute

■ Defendant maintains that the trial court erred when it found that his two Florida felony convictions, for offenses that occurred at almost the same time and in close proximity to one another, were separate and distinct criminal episodes under the habitual criminal statute. We disagree.

Under the former § 16–13–101(2), Colo. Sess. Laws 1981, ch. 200 at 948, a person convicted in Colorado of any felony, who had been convicted three times previously of separately brought and tried felony charges arising out of separate and distinct criminal episodes, was considered to be a habitual criminal and punished by life imprisonment. Under the former § 16–13–101(1), Colo. Sess. Laws 1981, ch. 200 at 948, a person who had been convicted twice previously of separately brought and tried felony charges arising out of separate and distinct criminal episodes would be sentenced to a term of between twenty-five and fifty years in prison.

Defendant contends that his habitual criminal adjudications should be reduced under the latter statute because two of his three habitual convictions arose from Florida felonies which did not arise out of separate and distinct criminal episodes. We disagree.

■ The entry of guilty pleas to multiple offenses during the same proceeding satisfies the requirement of "charges separately brought and tried," when the predicate convictions arose from charges which, "had they not been adjudicated through the entry of guilty pleas, would have been tried separately." *Gimmy v. People*, 645 P.2d 262, 267 (Colo.1982).

A division of this court has held that "criminal episode" under the habitual criminal sentencing statute should be given the same meaning as under the mandatory joinder statute. *See People v. Jones*, 967 P.2d 166 (Colo.App.1997) (interpreting mandatory joinder statute, § 18–1–408(2), C.R.S.2004).

■ As the supreme court has explained, "a series of acts arising from the same criminal episode" includes physical acts committed simultaneously or in close sequence, occurring in the same place or closely related places, and forming part of a schematic whole. *Jeffrey v. Dist. Court*, 626 P.2d 631 (Colo.1981).

Here, following an adjudicatory hearing in December 2001 on the habitual criminal counts, the trial court determined that the two Florida convictions were separately brought and tried. Those convictions were for (1) burglary of a dwelling and (2) aggravated battery and resisting an officer with violence. The burglary charge was based upon defendant's burglary of a home on June 22, 1987. Shortly thereafter, about five blocks away, a police officer encountered defendant in an undeveloped area while looking for car break-ins. After she approached defendant to determine his identity, she noticed that illegal martial arts weapons were protruding from his pockets. Accordingly, she placed defendant under arrest, and while she was placing defendant in handcuffs, the officer was thrown to the ground and kicked.

We agree with the trial court that this issue presents "a close question," but also agree with the trial court's resolution. Here, although the crimes were relatively close in time, they occurred in distinct areas. The arresting officer who was assaulted was looking for car break-ins; she was not on the lookout for burglars.

Further, the two cases against defendant were separately brought and tried under separate informations, even though defendant

pleaded guilty to both offenses at the same time.

Accordingly, we agree with the trial court's conclusion that the two Florida offenses arose out of separate and distinct criminal episodes under the habitual criminal statute, thereby subjecting defendant to sentencing under the former § 16–13–101(2).

### VI. Jury Trial on Habitual Criminal Counts

■ Defendant argues that the trial court erred when it rejected his motion for a jury trial on the habitual offender counts, especially in light of the People's confession of that motion. Again, we disagree.

Prior to 1995, a defendant was entitled to a jury trial on habitual criminal charges under former § 16–13–103. *See* Colo. Sess. Laws 1995, ch. 129 at 467; *People v. Edwards,* 971 P.2d 1080 (Colo.App.1998). That statute, now codified at § 18–1.3–803, C.R.S.2004, was amended such that it applied to all informations filed on or after July 1, 1995.

Here, although the incident which formed the basis for the charges against defendant occurred in 1992, the information was filed in 2001. Accordingly, under § 18–1.3–803, defendant was not entitled to a jury trial on the habitual criminal charges against him, notwithstanding the prosecutor's mistaken belief to the contrary.

Further, defendant did not have a constitutional right to a jury trial on the habitual criminal counts. *People v. Edwards, supra; see also People v. Johnson,* 74 P.3d 349 (Colo.App.2002).

Accordingly, the trial court did not err in holding a bench trial on the habitual criminal counts against defendant.

The judgment and sentence are affirmed.

Judge PLANK and Judge NEY concur.