The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 23, 2025

**2025COA84**

**No. 20CA1708, *People v. Fields* — Criminal Law — Sentencing
— Punishment for Habitual Criminals**

A division of the court of appeals applies, for the first time
since its announcement, *People v. Gregg*, 2025 CO 57, in which the
supreme court applied *Erlinger v. United States*, 602 U.S. 821
(2024), and held that habitual criminal adjudications under section
18-1.3-803, C.R.S. 2025, must be determined by a jury.  After
determining that the trial court erred — because a jury must
determine whether a defendant's prior convictions were separately
brought and tried and whether they arose out of separate and
distinct criminal episodes — the division, reviewing for
constitutional harmlessness, further concludes that the error in
this case does not warrant reversal.

Court of Appeals No. 20CA1708
City and County of Denver District Court No. 17CR1872
Honorable Edward D. Bronfin, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Troy L. Fields,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Freyre and Schock, JJ., concur

Prior Opinion Announced August 3, 2023, Vacated in 24-5460

Announced October 23, 2025

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Sean James Lacefield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     A jury convicted defendant, Troy L. Fields, of kidnapping and sexual assault against the victim, J.C., as well as five habitual criminal charges.[1]  Based on the habitual criminal charges, and the fact that Fields had already been adjudicated a habitual criminal in a prior case, the court sentenced him to concurrent sentences of ninety-six years in prison for kidnapping and life in prison with the possibility of parole after forty years for sexual assault.

¶ 2     Fields appealed, arguing the trial court violated the Uniform Mandatory Disposition of Detainers Act (UMDDA), improperly instructed the jury on the elements of kidnapping, and admitted irrelevant victim impact evidence.  He also challenged his adjudication as a habitual criminal and argued that his life sentence was illegal.  We affirmed Fields' convictions and sentences. *People v. Fields*, (Colo. App. No. 20CA1708, Aug. 3, 2023) (not published pursuant to C.A.R. 35(e)) (*Fields I*).

---

[1] The kidnapping and sexual assault charges stem from events that occurred in 1994, when J.C. arrived home, unlocked the front door of her house, and was pulled in by a man waiting inside.  The man held a knife to her throat, repeatedly threatened to kill her, moved her around the house, restrained her, and sexually assaulted her. The case had been cold for twenty-two years when detectives reprocessed DNA taken from J.C.'s vaginal swab and identified a match with a DNA sample taken from Fields.

¶ 3    The United States Supreme Court granted certiorari, vacated our judgment in *Fields I*, and remanded the case for further consideration in light of *Erlinger v. United States*, 602 U.S. 821 (2024).  *See Fields v. Colorado*, 604 U.S. ___, 145 S. Ct. 1136 (2025) (mem.).  *Erlinger* held that, under the Sixth Amendment, whether a criminal defendant's prior convictions were committed on different occasions from one another for purposes of the Armed Career Criminal Act is the sort of fact-laden inquiry that a jury must decide.  602 U.S. at 834.  Fields argues that for purposes of Colorado's habitual criminal statute, now codified at section 18-1.3-803, C.R.S. 2025, *Erlinger* also requires a jury to find whether a defendant's prior convictions were separately brought and tried, and whether they arose out of separate and distinct criminal episodes.

¶ 4    Since this case returned to us, the Colorado Supreme Court issued its opinion in *People v. Gregg*, 2025 CO 57.  It held that *Erlinger* applies to Colorado's habitual criminal sentencing statute and "the question of separate and distinct criminal episodes demands a jury finding."  *People v. Gregg*, 2025 CO 57, ¶ 24.  Applying *Gregg*, we conclude the trial court erred when it, rather

than a jury, decided the habitual criminal counts.  But we conclude
that the error does not warrant reversal of Fields' convictions on
those counts.  The result of our analysis with respect to all other
issues decided in *Fields I* remains unchanged.  We thus affirm
Fields' convictions and sentences.

## I.    Jury Trial on Habitual Criminal Adjudication

¶ 5     Fields asserts that the trial court erred when it adjudicated the
habitual criminal counts.  He argues that the court's failure to have
a jury decide whether the prosecution proved that his prior
convictions were separately brought and tried and that they arose
out of distinct criminal episodes violated his statutory and
constitutional rights.  We see no basis for reversal.

## A.    No Statutory Right

¶ 6     As to Fields' statutory arguments, we discern no error.  In
1994, when Fields committed the underlying offenses, "a defendant
was entitled to a jury trial on habitual criminal charges."  *People v.
King,* 121 P.3d 234, 243 (Colo. App. 2005); *see also* § 16-13-103,
C.R.S. 1994.  But that right was limited to the right to have a jury
decide the issue of identity.  *People v. Jones*, 967 P.2d 166, 169
(Colo. App. 1997) (the defendant "was not entitled to have any other

issues determined by the jury").  And in 1995, the legislature amended the statute to allow a court to determine habitual criminal charges as a matter of law for "all informations filed on or after July 1, 1995."[2]  *King*, 121 P.3d at 243.

¶ 7      Although Fields committed the underlying offenses in 1994, the prosecution filed its complaint and information in 2017.  Therefore, no jury trial was required.  *See id.*  Nevertheless, Fields received a jury trial on the issue of identity — a greater protection than he was entitled to by statute.  We are not persuaded by his arguments that *King* and *Jones* are inapposite.  Instead, we follow their holdings and conclude that his statutory rights were not violated.

        B.    Sixth Amendment Violation Was Harmless

¶ 8      We reach a different conclusion with respect to Fields' constitutional arguments.  We agree with Fields that *Erlinger* instructs that the jury should have determined whether Fields' prior convictions were separately brought and tried and whether they

---

[2] The legislature has since amended the habitual criminal statute to once again require a jury trial on habitual criminal charges.  *See* Ch. 344, sec. 1, § 18-1.3-803(1), (4), 2025 Colo. Sess. Laws 1866-67 (effective June 2, 2025).

arose out of distinct criminal episodes.  *See Gregg*, ¶ 24 (there are no material differences between the separate-offenses inquiry at issue in *Erlinger* and Colorado's habitual criminal sentencing statute).  Because both questions "require[] more than a mere determination of 'what crime, with what elements, the defendant was convicted of,'" a jury determination was required.  *See id.* (quoting *Erlinger*, 602 U.S. at 838).  Nevertheless, we conclude that the error was harmless.[3]

### 1.   No Structural Error

¶ 9     "Structural errors are constitutional 'defects affecting the framework within which the trial proceeds,' and they require automatic reversal because they defy analysis by harmless error standards."  *People v. Washington*, 2022 COA 62, ¶ 25.  Fields argues that his habitual criminal convictions must be reversed

---

[3] In *People v. Gregg*, the supreme court was not required to address the appropriate remedy when a judge, not jury, makes the habitual offense determination.  2025 CO 57.  Unlike Fields, the defendant in *Gregg* was never adjudicated a habitual criminal.  *Id.* at ¶ 39.  Because sentencing had not yet occurred, the supreme court only addressed whether double jeopardy precluded a second jury from deciding the habitual criminal counts.  Because we conclude that Fields was adjudicated and sentenced in error, we review the error for constitutional harmlessness.  C.A.R. 35(c).

because the court's error was structural. We disagree. *Erlinger* applied *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Alleyne v. United States*, 570 U.S. 99 (2013) — all of which addressed a sentencing judge's determination to increase the mandatory minimum sentence for a crime or to impose a sentence that exceeds the statutory maximum sentence, based on facts not submitted to the jury and proven beyond a reasonable doubt. Error under each of these cases is reviewed for constitutional harmlessness. *See Erlinger*, 602 U.S. at 835 (describing *Erlinger* as "on all fours" with *Apprendi* and *Alleyne*); *see also People v. Mountjoy*, 2016 COA 86, ¶¶ 14-15 (collecting cases and noting that both "a majority of the federal circuits" and "[m]any state appellate courts" have consistently applied harmless error review to *Apprendi/Blakely* errors), *aff'd*, 2018 CO 92M; *Villanueva v. People*, 199 P.3d 1228, 1231 (Colo. 2008) (reviewing *Blakely* error for constitutional harmlessness).

¶ 10    Despite this longstanding precedent, Fields argues that structural error applies because the *Erlinger* Court quoted a structural error discussion from *Rose v. Clark*, 478 U.S. 570, 578 (1986). We are not persuaded that this citation supports a

6

structural error analysis. The Supreme Court quoted *Rose* in the context of emphasizing the requirement that a jury must decide whether prior convictions were committed on separate occasions, even if, in many cases, that inquiry may be straightforward.[4] *See Erlinger*, 602 U.S. at 842 ("There is no efficiency exception to the Fifth and Sixth Amendments."). Despite quoting this discussion, the Court has consistently held that "most constitutional errors," including Sixth Amendment errors, "can be harmless." *Washington v. Recuenco*, 548 U.S. 212, 218 (2006) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)).

¶ 11   Fields also argues that, unlike the determination of a single element in an offense, the jury's determination of whether prior convictions were separately brought and tried and arose out of separate and distinct criminal episodes is too multifaceted and unpredictable to be reviewed for harmlessness. We disagree. Instead, these questions "can be definitively established based on the judicial records introduced at the habitual criminal trial."

---

[4] In fact, the dissent in *Erlinger* observed that because this inquiry is so straightforward, "[i]n most (if not all) cases," *Erlinger* error "will be harmless." *Erlinger v. United States*, 602 U.S. 821, 859 (2024) (Kavanaugh, J., dissenting).

*People v. Nunn*, 148 P.3d 222, 227 (Colo. App. 2006). Accordingly, structural error does not apply.

### 2. Assuming Preservation, Any Error Was Harmless

¶ 12 Because we conclude that *Erlinger* error is not subject to automatic reversal for structural error, we must next decide whether reversal is appropriate under the applicable standard. The parties disagree about whether Fields preserved his constitutional arguments. But even if we assume preservation, reversal is not warranted.

¶ 13 We review preserved claims of constitutional error for constitutional harmless error. *Hagos v. People*, 2012 CO 63, ¶ 11. These errors require reversal unless we can declare that the error was harmless beyond a reasonable doubt. *Id.* "In other words, we reverse if 'there is a reasonable *possibility* that the [error] might have contributed to the conviction.'" *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

¶ 14 For a defendant to be adjudged a habitual criminal under section 18-1.3-801(2)(a)(I), the prosecution must prove beyond a reasonable doubt that the defendant, having been convicted of a felony, "has been three times previously convicted, upon charges

8

separately brought and tried, and arising out of separate and distinct criminal episodes." *People v. Williams*, 2019 COA 32, ¶ 37. "Charges are separately brought where they are 'in separate informations, with separate docket numbers, arising out of separate criminal incidents.'" *Id.* at ¶ 38 (quoting *Gimmy v. People*, 645 P.2d 262, 267 (Colo. 1982)). "[A] predicate conviction can result from either a conviction following trial or a guilty plea." *Id.* Convictions arising from guilty pleas satisfy the requirement of "separately brought and tried" when the underlying charges "would have been tried separately" if not for the guilty plea. *Id.* (citation omitted). Prior crimes arise from distinct criminal episodes where they are separated by enough time and have different victims and locations, such that "proof of neither could have formed a substantial portion of the proof of the other." *Marquez v. People*, 2013 CO 58, ¶ 20.

¶ 15 At the close of trial and while the jury was still empaneled, the prosecution presented evidence of the following:

- On September 12, 1988, Fields pled guilty to burglary and theft against a business for an offense occurring in Sedgwick County, Kansas, on January 30, 1987.

- On April 8, 1988, Fields pled no contest to burglary and theft against a residence for an offense occurring in Shawnee County, Kansas, on May 11, 1987.

- On November 6, 1989, Fields pled no contest to forgery for an offense that took place in Shawnee County on November 30, 1987.[5]

¶ 16    The record contains charging documents for each of these offenses; they show different dates (separated by a span of months), different locations, different victims, and different case numbers. Given this record, we cannot imagine a scenario in which a jury could have found that Fields' prior offenses occurred as part of the same criminal episode or that the prosecution might have brought and tried them together. Instead, based on this overwhelming

---

[5] The prosecution also presented evidence that Fields pled guilty to attempted drug possession for an offense occurring on December 18, 1987, and to attempted drug possession for another offense occurring on September 20, 1989. Depending on the underlying facts, these convictions might or might not have been considered felonies if they had been committed in Colorado. *See* § 18-1.3-801(2)(a)(I), C.R.S. 2025 (if a conviction occurred in another state, it must be for a crime that would be a felony in Colorado to be eligible to enhance a defendant's sentence as a habitual criminal). But even without them, we conclude that there is overwhelming evidence to support Fields' habitual criminal adjudication and sentence.

evidence, we conclude that any rational jury would have found, beyond a reasonable doubt, that Fields' convictions were separately brought and tried and arose out of distinct criminal episodes. *See Erlinger*, 602 U.S. at 842 ("Often, a defendant's past offenses will be different enough and separated by enough time and space that there is little question he committed them on separate occasions."); *see also United States v. Butler*, 122 F.4th 584, 590 (5th Cir. 2024) (*Erlinger* error was harmless beyond a reasonable doubt where the record clearly showed that the prior offenses spanned a range of months to years and involved different parties).

¶ 17    Because there is no reasonable possibility that the trial court's error in failing to try the "separately brought and tried" and "separate and distinct criminal episode" elements to a jury might have contributed to Fields' habitual criminal convictions, reversal is not warranted.

## II.    Other Issues

### A.    UMDDA

#### 1.    Applicable Law

¶ 18    The UMDDA provides that a prisoner "may request final disposition of any untried indictment, information, or criminal

11

complaint pending against him in this state." § 16-14-102(1), C.R.S. 2025. Once the trial court and prosecution receive a UMDDA request, the prisoner must be brought to trial within 182 days. § 16-14-104(1), C.R.S. 2025. A defendant invokes his rights under the UMDDA if (1) his request substantially complies with the statute's requirements; and (2) the prosecution receives "actual notice," which means "actual knowledge," of his request. *People v. McKimmy*, 2014 CO 76, ¶¶ 20-21. If a defendant invokes his rights but the trial court fails to comply with the 182-day deadline, the court loses jurisdiction, and the charges must be dismissed with prejudice. § 16-14-104(1).

¶ 19     In reviewing a denial of a motion to dismiss for violation of the UMDDA, we defer to the trial court's factual findings provided they are supported by competent evidence, but we review the court's legal conclusions de novo. *McKimmy*, ¶ 19.

## 2.    Procedural History

¶ 20     The prosecution filed the underlying charges against Fields on March 24, 2017. On May 7, 2017, while Fields was represented by a public defender, Fields' wife, Lisa Fields, sent a fax to the prosecutor and county court requesting final disposition of the

12

charges under the UMDDA and seeking removal of the public defender. On May 19, 2017, the county court issued a minute order noting that it had received these motions, but "[u]nless Lisa Fields is a licensed attorney said motions are null." Fields himself filed a second UMDDA request, which was received on August 2, 2017.

¶ 21 The case was moved to the district court, and a motions hearing was held on November 3, 2017. Representing himself, Fields argued that the county court misapplied the law by nullifying the May 7th UMDDA request and that his right to a speedy trial would be violated unless trial was held by the following day. The prosecutor argued that Fields did not file an effective notice of his rights because the prosecutor's office never received the motion and she was not familiar with the telephone number to which the motion had been faxed.

¶ 22 The trial court deferred ruling on the motion and ordered the prosecutor to investigate whether the May 7th request was received and whether service by fax was sufficient.

¶ 23 At a subsequent hearing, the prosecutor argued that the county court properly exercised its discretion to nullify Fields'

13

UMDDA request. The trial court noted that while the record did not indicate why the county court rejected the May 7th filing "but accepted an almost identical filing . . . on August 2nd," it was "not in a position to countermand what [the county court] did." Because the May 7th request was nullified, the court denied the motion to dismiss.

### 3. Discussion

¶ 24 Fields argues that the trial court improperly relied on the law of the case doctrine because the county court abused its discretion by nullifying the May 7th UMDDA request.[6] We disagree. A criminal defendant is not entitled to hybrid representation — self-representation and representation by counsel — and a court is entitled to ignore pro se filings submitted by a represented defendant. *See People v. Gess*, 250 P.3d 734, 737 (Colo. App. 2010). Moreover, Fields' wife, a nonattorney, filed the request, which she is not authorized to do. *People v. Adams*, 243 P.3d 256, 266 (Colo. 2010) (nonattorneys may not engage in the unauthorized practice of law, including by preparing court pleadings). Because

---

[6] Fields does not appeal the timeliness of his trial as related to his August 2nd UMDDA request.

14

the county court properly nullified the UMMDA request filed by Fields' wife, the trial court properly concluded that this request was void. *See People v. Warren*, 55 P.3d 809, 813 (Colo. App. 2002) ("Under the law of the case doctrine, prior relevant rulings made in the same case generally are to be followed."); *People v. Dyer*, 2019 COA 161, ¶ 39 (we may affirm on any ground supported by the record). Accordingly, we discern no error.

## B.     Kidnapping Instruction

¶ 25     Fields next argues that the trial court reversibly erred by incorrectly instructing the jury on the elements of second degree kidnapping. The prosecution agrees that the instruction was incorrect but argues that reversal is not required.

¶ 26     Second degree kidnapping requires that the defendant knowingly "seizes and carries" a person "from one place to another" without lawful justification or the person's consent. § 18-3-302(1), C.R.S. 2025. Though the elemental instruction correctly listed the elements, a separate definitional instruction said that "'[s]eized and carried' means any movement, however short in distance." Between the time of trial and this appeal, the Colorado Supreme Court held that such an instruction is error. *Garcia v. People*, 2022 CO 6,

¶¶ 20-21 (this instruction eliminates the seizure element and improperly changes the asportation element from carrying a person from one place to another to "any movement, however short in distance," effectively lowering the prosecution's burden of proof).

¶ 27    Because the error was unpreserved in this case, we reverse only if it was plain. *See Hagos*, ¶ 14. Plain error is error that is both obvious and substantial. *Id.* An error is substantial if it so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Id.*

¶ 28    Since our decision in *Fields I*, the supreme court has made clear that the obviousness of an error for purposes of plain error review must be judged at the time the error was made, not at the time of appellate review. *People v. Crabtree*, 2024 CO 40M, ¶ 4. At the time of trial, the law was settled that the definitional instruction given here was correct. *See People v. Bondsteel*, 2015 COA 165, ¶¶ 94-97, *overruled by, Garcia v. People*, 2022 CO 6; *People v. Rogers*, 220 P.3d 931, 936 (Colo. App. 2008), *overruled by, Garcia v. People*,

2022 CO 6.  Accordingly, because the error was not obvious, it was not plain error.[7]

### C.    Victim Impact Evidence

¶ 29    Fields also argues that he is entitled to a new trial based on the improper admission of victim impact evidence.  Specifically, he challenges J.C.'s testimony that she "never [again] lived" in the home where she was assaulted and J.C.'s mother's testimony that J.C. "would never let [the mother] turn the lights off day or night" and "would never sleep by herself," choosing to sleep with her mother "because she was so scared with the lights on day and night."

¶ 30    Fields' counsel did not object to this testimony at trial, so again, reversal is not required in the absence of plain error.  *Hagos*, ¶ 14.  We are not convinced that the testimony was irrelevant, as it

---

[7] We recognize that we analyzed this issue differently — albeit reaching the same conclusion — in *People v. Fields*, slip op. at ¶¶ 13-21 (Colo. App. No. 20CA1708, Aug. 3, 2023) (not published pursuant to C.A.R. 35(e)) (*Fields I*).  In that now-vacated opinion, we concluded that even if the instructional error was obvious, it was not substantial based on overwhelming evidence, a conclusion to which we continue to adhere.  *Id.* at ¶¶ 17-21.  But *People v. Crabtree*, 2024 CO 40M, is also now dispositive, and so we apply it as well.

17

had some tendency to lend credibility to J.C.'s testimony that the crime happened as she said it did. *People v. Haymaker*, 716 P.2d 110, 113-14 (Colo. 1986) (though state-of-mind evidence is to be viewed with skepticism, the evidence was not improper because it "substantiated the credibility of the victim" and was not so inflammatory or repetitive as to violate CRE 403). But even assuming that this testimony was improper, reversal is not required. Both J.C.'s and her mother's testimony was brief, was not referenced in closing argument, and "conveyed relatively mundane information when compared with the graphic evidence otherwise admitted at trial." *People v. Dean*, 2012 COA 106, ¶ 46, *aff'd*, 2016 CO 14.

D.    Applicability of Section 16-13-101(2.5), C.R.S. 1994

¶ 31    Finally, we are not persuaded by Fields' argument that his life sentence for sexual assault is illegal. As it did in 1994, the habitual criminal statute requires life imprisonment for any person who was convicted and sentenced as a habitual criminal and "who [was] thereafter convicted of a felony which is a crime of violence." § 18-1.3-801(2.5), C.R.S. 2025; § 16-13-101(2.5), C.R.S. 1994. Five days after the 1994 sexual assault, Fields committed a burglary. He was

18

convicted of burglary and adjudicated a habitual criminal in 1995. He was convicted of the charges in this case in 2019.

¶ 32    Fields argues that his life sentence is illegal because he committed the crime of violence (the sexual assault) before he committed burglary. Put another way, he argues that the burglary cannot serve as the predicate offense under the habitual criminal statute because it occurred after the sexual assault.

¶ 33    Despite Fields' arguments, the statute's plain language unambiguously provides that the sequence of *convictions* — not commission of the offenses — controls. *See McCoy v. People*, 2019 CO 44, ¶ 38 ("If the statute is unambiguous, then we need look no further."); *see also People v. Woodside*, 2023 CO 25, ¶ 17 (a conviction is "prior" even if it is for conduct occurring after a second offense where the plain language of the applicable statute does not "contemplate the timing of the underlying conduct"). We therefore conclude that Fields was properly sentenced.

## III.    Disposition

¶ 34    The judgment is affirmed.

JUDGE FREYRE and JUDGE SCHOCK concur.