The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Jesse LAGUNAS, Defendant-Appellant.

No. 83CA1369.

Colorado Court of Appeals, Div. III.

June 20, 1985.

Rehearing Denied July 18, 1985.

Certiorari Denied Dec. 16, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Gerash & Robinson, P.C., Scott H. Robinson, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, Jesse Lagunas, appeals his judgment of conviction, entered after a jury trial, of first degree murder in connection with the shooting death of Frank Marquez. We affirm.

On the morning of April 17, 1982, Marquez was working on his car in a vacant lot near 10th and Inca Streets in Denver. Several friends were drinking beer and helping Marquez. A light blue van with red primer spots was parked next to Marquez' car.

A neighbor testified that he heard loud voices arguing in the vacant lot and observed an argument. He testified that one of the men threw his beer bottle on the ground, left the group, went to the open passenger side door of the light blue van and then returned to the group. This man fired a shot into the ground and about 30 seconds later began to fire rapidly at Marquez from a distance of four or five feet. Marquez ran to the front of the house next

to the vacant lot, turned, and asked the assailant not to fire again, but the assailant shot again and followed Marquez as he fled down the street.

Marquez ran into a nearby house, and fell to the dining room floor. The assailant returned to the light blue van, closed the sliding door, ran around to the driver's side, got in, and sped away. The other men dispersed.

Marquez suffered multiple gunshot wounds. He was treated by paramedics at the scene, and underwent surgery, but he died a few hours later from massive blood loss.

## I.

The investigating officer testified that when he arrived at the scene of the shooting he inquired about Marquez' condition from the paramedics. They replied that he "wasn't doing very well." Marquez then blurted out, "I'm dying for no reason." At that point the officer asked, "Do you know what happened?" or "How did this happen?" Marquez replied, "Jesse shot me five times for no reason." The police officer also asked Marquez, "Where did the shooting occur?" Marquez replied, "In the lot, the vacant lot." When Marquez was asked if he knew Jesse's last name, he said he did not, but when asked if he knew where Jesse lived, he responded that Jesse lived near Lipan or 44th or 38th in the northwest section of Denver.

Florence Vallejos, the tenant at the house where Marquez sought refuge after being shot, testified that she heard him say either, "Jesse's going to get it," or, "Jesse did it."

The prosecution filed an *in limine* motion which requested that the trial court allow the testimony of these witnesses concerning Marquez' statements. The trial court granted this motion and permitted the testimony, finding that the statements were admissible both as dying declarations pursuant to § 13–25–119, C.R.S., and as excited utterances pursuant to CRE 803(2).

## A.

Citing *Clark v. People*, 103 Colo. 371, 86 P.2d 257 (1939), the defendant argues that the evidence failed to show that all hope of recovery was abandoned by either Marquez or the medical practitioners attending him and that, therefore, the statements did not meet the dying declaration hearsay exception. We disagree.

Section 13–25–119, C.R.S., sets out the requirements for admission of a dying declaration. In pertinent part it states:

"[T]o render the declarations of the deceased competent evidence, it must be satisfactorily proved:

(a) That at the time of the making of such declaration he was conscious of approaching death and believed there was no hope for recovery;

(b) That such declaration was voluntarily made, and not through the persuasion of any person;

(c) That such declaration was not made in answer to interrogatories calculated to lead the deceased to make any particular statement;

(d) That he was of sound mind at the time of making the declaration."

■ To render a dying declaration admissible, it is not necessary that the declarant should have stated that at the time it was made under a sense of impending death. It is enough if it satisfactorily appears, in any mode, that it was made under that sanction. *Dolan v. People*, 168 Colo. 19, 449 P.2d 828 (1969).

■ Here, the trial court found that the statute had been complied with and, thus, admitted Marquez' statements. We find no error in that decision. The evidence showed that Marquez was conscious of his approaching death and that he had no hope for recovery. His statements were made voluntarily, not as a result of the officer's persuasion or intimidation. *See Polly v. People*, 107 Colo. 6, 108 P.2d 220 (1940).

The fact that the declaration was made after the police officer questioned the par-

amedic about Marquez' condition does not constitute an answer made to interrogatories calculated to lead the deceased to any particular statement and, therefore, does not violate § 13–25–119, C.R.S. Moreover, the record demonstrates that Marquez was alert, awake, and of sound mind at the time he made the statements.

Thus, Marquez' dying declarations were properly admitted.

### B.

The trial court also found that Marquez' statements were excited utterances and therefore, under CRE 803(2), were admissible exceptions to the hearsay rule. Defendant contends that this ruling was erroneous since there was no showing made of the temporal proximity of the shooting to Marquez' statements. Again, we disagree.

 The excited utterance exception applies to statements relating to a startling act or event, made spontaneously and without reflection, while the declarant was under the stress of excitement, and offered to prove the truth of the matter asserted. *Lancaster v. People*, 200 Colo. 448, 615 P.2d 720 (1980). While temporal proximity of the statement to the event is important, contemporaneity of the act and assertion is not required. *Lancaster v. People, supra.*

 Contemporaneity of the event and the statement is not required if the declarant is still under stress while making the statement. Because the duration of stress will obviously vary with the intensity of the experience and the emotional endowment of the individual, the exception necessarily vests the trial court with broad discretion in applying the rule. J. Quinn, *Hearsay in Criminal Cases Under the Colorado Rules of Evidence: An Overview*, 50 Univ. Colo.L.Rev. 277 (1979).

 The investigating officer testified that he arrived at the scene approximately one minute after the call concerning the shooting, and that his arrival was within five to ten minutes of the shooting. Marquez was on the floor, conscious and alert, in pain and bleeding profusely from six visible gunshot wounds. His condition was critical; the paramedics had inserted intravenous lines and had begun a monitor tape. The realization of impending death was another in a short chain of extremely stressful events that could have provoked Marquez into making such a statement. Consequently, the statements qualified as excited utterances and the trial court properly ruled that this hearsay exception constituted an independent basis for their admission into evidence.

### II.

Following the prosecution's case, and at the conclusion of all evidence, the defendant moved for judgment of acquittal pursuant to Crim.P. 29. Both motions were denied, and defendant now contends that the trial court erred because there was insufficient evidence to establish beyond a reasonable doubt that he was the perpetrator of the crime. We disagree.

 In ruling on a motion for judgment of acquittal, the issue before the trial court is whether the relevant evidence, both direct and circumstantial, when viewed as a whole in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Stark*, 691 P.2d 334 (Colo.1984); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

The defendant owned a distinctive light blue van with red primer spots that he lived in and that was ordinarily parked in the vacant lot where the shooting occurred. A number of witnesses identified the light blue van parked in the vacant lot the morning of the shooting as being the defendant's. This van was found some days after the shooting in another lot, and it contained evidence linking the defendant to it.

Marquez' statements, as discussed in Part I, further implicate the defendant. As well, the evidence showed that Marquez owed the defendant $900.

 Viewing this evidence as a whole, and in the light most favorable to the People, we conclude it is substantial and sufficient to support a conclusion by a reasonable mind that the defendant was guilty beyond a reasonable doubt. Thus, we will not disturb the trial court's rulings.

### III.

In investigating the murder, the police were led to defendant's home town in Texas. On inquiry, the police there found a contact card referring to a Jesse Lagunas. That information led to a Colorado driver's license issued to defendant.

The parties stipulated that the prosecutor would be allowed to ask a detective leading questions to establish the method by which Denver police obtained the defendant's last name, to avoid the possibility of mentioning the contact card provided by the Texas police department. The detective testified that, based on information received from a sergeant at the Denver police department and on information from Texas, he was able to determine that a Jesse Lagunas had a Colorado driver's license. He obtained a copy of this license photograph and then used it in a photographic lineup. When asked how the lineup was compiled, the detective answered,

"We had received photographs from the State of Texas. And these photographs—photograph of an individual was inserted with eight other similar photographs from the Denver police department's record room."

Defendant argues that the "clear implication" of this reference was that the defendant's photograph had been obtained from an official organization, that it could not have been a driver's license photograph, since the license photograph had already been obtained from Colorado, and that, therefore, it must have been a "mug shot" obtained by Texas authorities as a result of defendant's prior criminal activities in Texas.

The trial court denied defendant's motion for a mistrial, finding that no inference would necessarily be made by the jury as to defendant's prior criminal activity. It offered defense counsel an opportunity to request a limiting instruction or other admonition to the jury; however, defendant decided to rest on the record made.

A trial court can better evaluate the effect, if any, of improper testimony on a jury than can a reviewing court, and absent an abuse of discretion, a trial court's denial of a motion for a mistrial will not be disturbed on review. *People v. Williams*, 42 Colo.App. 58, 595 P.2d 692 (1979). Here, there was no indication that the People purposely elicited this information, and there was no showing of prejudice to the defendant.

Given these circumstances, we agree with the trial court that the mere mention of a photograph from the State of Texas did not constitute a basis for granting defendant's motion for mistrial.

Judgment affirmed.

STERNBERG and TURSI, JJ., concur.