Petitioner: Marco COMPAN,

v.

Respondent: The PEOPLE of the State of Colorado.

No. 04SC422.

Supreme Court of Colorado, En Banc.

Oct. 3, 2005.

RICE, Justice.

Petitioner Marco Compan was convicted of third degree assault. The victim, Petitioner's wife Angelica Martinez, did not testify. As a result, the principal evidence against Petitioner was hearsay statements made by the victim to her friend Gloria Vargas. The trial court admitted the victim's statements as excited utterances pursuant to CRE 803(2). We granted certiorari to determine whether admission of the victim's statements infringed Petitioner's confrontation rights under the United States and Colorado Constitutions. Upon review, we hold that the admission of the victim's statements did not deprive Petitioner of his federal and state constitutional rights to confront the witnesses against him. Accordingly, we affirm his conviction.

## I.  Factual and Procedural History

On the day of the assault in August 2001, the victim made two telephone calls to Vargas from a payphone outside the restaurant she and Petitioner owned. During the first call, the victim told Vargas that Petitioner was angry and yelling at her; she feared Petitioner would hit her. Vargas could barely understand the victim because she was crying so hard and talking nervously in broken speech. The victim wanted to be picked up and asked to stay at Vargas's home. Vargas agreed to help, but the victim asked her to wait for a second call before coming to the restaurant in order to calm Petitioner down and gather up some personal belongings.

About twenty minutes later, the victim telephoned Vargas again, immediately declaring, "Gloria, he already hit me. He already hit me. Come get me." Noticing the victim sounded more subdued, very quiet and sad as if she could barely talk, Vargas told her she would be right there to pick her up.

When Vargas arrived at the restaurant about fifteen minutes later, the victim immediately approached her vehicle and exclaimed, "Gloria, I just have to tell you what's been happening to me. I can't believe it." The victim was crying, and Vargas noticed the victim's face and arms were reddened. She told Vargas that she was hurt, pointing to her abdomen. Vargas asked

David S. Kaplan, Colorado State Public Defender, Jud Lohnes, Deputy State Public Defender, Denver, for Petitioner.

John W. Suthers, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, for Respondent.

what had happened, but the victim looked back toward Petitioner and whispered, "Let's hurry. Let's hurry, hurry. Get out of here. He's standing right there, and he might come after me." Vargas quickly loaded the victim's belongings into her van, and drove the victim to her home.

While riding in Vargas's van, the victim was biting her nails, shaking, and crying. She told Vargas, "I'm scared. I'm scared and afraid." The victim explained that Petitioner had slapped her, pulled her hair, and threw her against a wall. Vargas then learned that Petitioner also had kicked and punched the victim in her stomach.

Vargas drove directly home, and upon arriving, led the victim inside without stopping to unload her belongings. The victim continued recounting the assault in a visibly frightened manner. She repeated that Petitioner had thrown her against the restaurant wall and added that Petitioner also had choked her with both hands. After twenty or thirty minutes, Vargas made the victim a cup of tea to help her calm down, and the victim asked Vargas to call the police and take her to the hospital.

The prosecution was unable to produce the victim at trial and filed a notice of its intention to introduce her hearsay statements as recounted by Vargas. The trial court held a hearing in April 2002 to determine the admissibility and constitutionality of the victim's statements. In addition to the aforementioned summary of the victim's statements and her demeanor, Vargas testified she had not seen the victim for about four months. Vargas did not know where the victim was and had no idea how to get in touch with her. Vargas even had tried to contact the victim at her mother's home in Mexico City. Vargas called several times, but no one answered. About one week before the hearing, the victim's mother called, wondering if Vargas knew where the victim was. Vargas did not, but she learned the victim's mother had not heard from the victim for about one month. Based on what she last heard, the victim's mother believed the victim was somewhere in California.

The district attorney stated that he personally had tried to determine the victim's whereabouts. In addition to telephoning Vargas, the district attorney explained that his office sent a certified letter to Vargas in October. Although Vargas signed for the letter, neither she nor the victim contacted the district attorney's office as requested. Following up on this letter, a police detective learned from Vargas around October that the victim was no longer staying with her. Vargas told the police detective she believed the victim had returned to her mother's house in Mexico because she was afraid to testify against Petitioner. The police detective made a second attempt to contact the victim through Vargas in December or January, but no one answered the door at Vargas's home.

Additional testimony revealed that in February, the victim appeared at the district attorney's office on a Friday afternoon and made an appointment for the following Monday to formally recant her accusation. She gave her address only as "a motel Platte," and she did not show up for the appointment on Monday. Realizing the victim at least had been in the county, the prosecution requested a continuance in March. Yet, since it had no address or telephone number for the victim, the district attorney was unable to locate her before trial. Another call was made to Vargas, but Vargas reiterated that the victim was no longer staying with her, and she believed the victim was in Mexico.

Upon the above evidence, the trial court admitted the victim's statements to Vargas as excited utterances. However, the trial court limited admission only to the statements made while the victim was still under stress from the startling event. The trial court did not allow Vargas to testify about any of the victim's statements made after she arrived at Vargas's home and had begun to calm down while drinking tea. As for Petitioner's confrontation rights, the trial court found no deprivation because the victim was unavailable to testify at trial, despite the prosecution's reasonable efforts, and her hearsay statements bore sufficient indicia of reliability.

Following conviction, Petitioner sought review. He argued that the trial court committed reversible error when it admitted Var-

gas's testimony. According to Petitioner, the victim's hearsay statements were not admissible as excited utterances, and even if they were, her statements were testimonial and therefore violated his rights to confrontation guaranteed by the United States and Colorado Constitutions.

In a published opinion, a unanimous panel of the court of appeals affirmed Petitioner's conviction. *People v. Compan,* 100 P.3d 533 (Colo.App.2004). As a threshold matter, the court of appeals found that the victim's hearsay statements were properly admitted as excited utterances because the victim was under the stress of a startling event when she made the spontaneous statements to Vargas. *Id.* at 536.

Turning to Petitioner's constitutional challenges, the court of appeals first examined *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and concluded that only testimonial statements were protected by the United States Constitution: nontestimonial "hearsay simply lies outside the scope of the Sixth Amendment's Confrontation Clause." *Compan,* 100 P.3d at 538. Since it found the victim's statements were not testimonial, the court of appeals held their admission did not violate Petitioner's federal right to confront the witnesses against him. *Id.*

Consequently, the court of appeals next considered Petitioner's confrontation right under the Colorado Constitution. Noting that this Court "has recognized the possibility that the state constitution may afford greater protection" of an accused's confrontation right, the court of appeals "conclud[ed] that it is prudent to adhere to the rule of

*Roberts* and *Dement."* *Compan,* 100 P.3d at 538 (citing *Blecha v. People,* 962 P.2d 931, 941 (Colo.1998)) (referencing *Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *People v. Dement,* 661 P.2d 675, 680–81 (Colo.1983)).[1] Thus, the court of appeals held that for nontestimonial hearsay, the Colorado Confrontation Clause requires unavailability and reliability.

Then, reviewing the record for satisfaction of the *Dement* test, the court of appeals determined that the trial court did not err in finding the victim unavailable to testify because the prosecution had made "good faith, reasonable efforts to produce the victim." *Compan,* 100 P.3d at 539. And since the victim's statements were properly admitted pursuant to CRE 803(2), the court of appeals found the victim's statements reliable: an "excited utterance is a firmly rooted hearsay exception," and the victim's statements "bear the necessary indicia of reliability." *Id.* (citing *People v. Martinez,* 18 P.3d 831, 836 (Colo.App.2000)). As a result, the court of appeals held that the trial court's admission of the victim's nontestimonial hearsay statements through Vargas's testimony did not violate Petitioner's confrontation right guaranteed by the Colorado Constitution. *Compan,* 100 P.3d at 539.

Petitioner sought further review, and we granted certiorari.[2] We now affirm Petitioner's conviction. *Crawford* only applies to testimonial statements, and the victim's statements are not testimonial. As a result, *Crawford* does not require Petitioner to have had a prior opportunity to cross-examine the victim.

1. In *Roberts,* the United States Supreme Court held that absent a defendant's prior opportunity of cross-examination, hearsay evidence is inadmissible at trial unless the declarant is unavailable and his or her statements bear sufficient indicia of reliability. 448 U.S. at 65, 100 S.Ct. 2531. We adopted this two-part analysis in *Dement,* declaring it equally applicable to admission of hearsay evidence under the Colorado Constitution. 661 P.2d at 680–81.

2. The issues upon which we granted certiorari are as follows:

  (1) Whether Petitioner's constitutional right to confrontation under the Sixth Amendment to the United States Constitution was violated by

the admission of an extended narration as an "excited utterance" exception to the hearsay rule when such evidence was never tested by cross-examination as required by *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

(2) Whether Petitioner's constitutional right to confrontation under Article II, Section 16 of the Colorado Constitution was violated by the admission of an extended narration, beginning at least fifteen minutes after the alleged incident, and continuing on for an additional thirty to thirty-five minutes as an "excited utterance" exception to the hearsay rule.

Because the statements are nontestimonial, *Roberts* still controls their admissibility. Here, the victim's statements were properly admitted as excited utterances, and since an excited utterance is a firmly rooted hearsay exception, there are sufficient indicia of reliability. Therefore, we conclude Petitioner's federal constitutional right to confront the witnesses against him was not infringed.

Moreover, we hold that Petitioner has not been deprived of his right under the Colorado Confrontation Clause to confront the witnesses against him face to face. Since the victim's statements are nontestimonial, *Dement* still governs their admission. Here, the prosecution met its burden of showing that the victim was unavailable to testify at trial, despite its reasonable, good faith efforts, and that the statements, as firmly rooted excited utterances, bear sufficient indicia of reliability.

## II. Analysis

### A. The Victim's Statements Are Not Testimonial

In *Crawford*, the United States Supreme Court held that the admission of testimonial hearsay at trial, absent the unavailability of the declarant and a prior opportunity for cross-examination by the defendant, violates the accused's confrontation right under the Sixth Amendment to the United States Constitution. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. Petitioner argues the victim's statements are testimonial under *Crawford*, and therefore, his federal constitutional right to confrontation was violated because he did not have an opportunity to cross-examine the victim. As such, we first must determine whether the excited utterances in this case are testimonial in nature. We conclude they are not.

"Testimonial" is not clearly defined in *Crawford*. *Id.* at 68, 124 S.Ct. 1354 ("We leave for another day any effort to spell out a comprehensive definition ...."). Nonetheless, the Supreme Court offered some guidance. Specifically, the Supreme Court held that evidence is testimonial, at a minimum, if it is given "at a preliminary hearing, before a grand jury, or at a former trial; and [in]

police interrogations." *Id.* The victim's statements in this case were not made during either prior hearings or during a police interrogation and therefore clearly do not fall within the explicit guidance of *Crawford*.

Beyond this explicit guidance, the Supreme Court also commented on other types of statements which might qualify as testimonial. These include: " 'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," ' *id.* at 51, 124 S.Ct. 1354 (citation omitted); " 'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," ' *id.* at 51–52, 124 S.Ct. 1354 (quoting *White v. Illinois*, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) ) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment); and " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," ' *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354 (citation omitted). *See also United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir.2005) (applying *Crawford*'s formulations to hold that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime").

We need not decide whether to adopt any or all of these potential categories of testimonial evidence postulated by the Supreme Court because the victim's statements do not fit within them. Her remarks were not made *ex parte* by way of an affidavit, a custodial examination, prior testimony that the defendant was unable to cross-examine, or a similar pretrial statement that she would reasonably have expected to be used prosecutorially. Nor were her statements formal extrajudicial statements made in an affidavit, a deposition, during prior testimony, or a confession.

Finally, the victim's statements were not made under circumstances which would

lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Rather, the victim was speaking informally to her friend. *See People v. Garrison*, 109 P.3d 1009, 1011 (Colo.App.2004) (holding victim's excited utterances to co-worker not testimonial because statements were not made to police and there was no indication co-worker was police agent), *cert. denied*, No. 04SC733, 2005 WL 878563 (Colo. Apr.18, 2005); *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir.2004) (finding statements made in private conversation between private individuals were not made under circumstances in which an objective person would reasonably believe statements would be available for later use at trial); *see also Lopez v. State*, 888 So.2d 693, 699 (Fla. Dist.Ct.App.2004) ("A spontaneous exclamation to a friend or family member is not likely to be regarded as testimonial .... In contrast, a startled person who identifies a suspect in a statement to a police officer at the scene of a crime surely knows that the statement is a form of accusation that will be used against the suspect.") (citations omitted).

In short, the statements made by the victim in this case are not testimonial.

## B. The Federal Confrontation Clause Applies to the Victim's Nontestimonial Statements

▇ Since we find the victim's statements nontestimonial, we next must determine what federal constitutional scrutiny, if any, to apply to nontestimonial hearsay statements. We hold in accordance with *Crawford* and in concert with the majority of courts which have considered the issue, that the constitutionality of nontestimonial statements is controlled by the federal confrontation clause as set forth in *Roberts*.

The United States Supreme Court clearly stated in *Crawford* that its holding applied only to testimonial evidence; *Roberts* continues to govern federal constitutional scrutiny of nontestimonial evidence:

> Where *nontestimonial* hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—*as does*

*Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where *testimonial* evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

541 U.S. at 68, 124 S.Ct. 1354 (emphasis added).

Following this plain differentiation, the federal Courts of Appeals considering the issue have held that *Crawford* did not overrule *Roberts'* reliability requirement as applied to nontestimonial evidence. *See United States v. Brun*, 416 F.3d 703, 707 (8th Cir.2005) (explaining that "'*Crawford* raises some doubt whether the *Roberts* reliability analysis remains good law when applying the Confrontation Clause to nontestimonial hearsay,'" but finding the First Circuit's application of *Roberts* to nontestimonial excited utterances persuasive) (citations omitted); *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir.2005) ("*Crawford* dealt only with testimonial statements and did not disturb the rule that nontestimonial statements are constitutionally admissible if they bear independent guarantees of trustworthiness."); *United States v. Holmes*, 406 F.3d 337, 348 (5th Cir.2005) ("With respect to nontestimonial statements, however, *Crawford* leaves in place the *Roberts* approach to determining admissibility."); *United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir.2005) ("[U]nless a particular hearsay statement qualifies as 'testimonial,' *Crawford* is inapplicable and *Roberts* still controls."); *Parle v. Runnels*, 387 F.3d 1030, 1037–38 (9th Cir.2004) (applying *Roberts* to nontestimonial evidence with minimal analysis); *United States v. Saget*, 377 F.3d 223, 227 (2d Cir.2004) (noting that by awaiting "a definitive ruling from the Supreme Court," defendants merely would receive benefit of increased protection); *Horton*, 370 F.3d at 84 ("[U]nless [the defendant]'s statements qualify as 'testimonial,' *Crawford* is inapplicable and *Roberts* continues to apply.").

In addition, the state supreme courts addressing constitutional scrutiny of nontestimonial evidence after *Crawford* also conclude *Roberts* still governs. *See State v. Manuel*,

697 N.W.2d 811, 826 (Wis.2005) (noting "only one reported case, a trial court decision, has construed *Crawford* as exempting nontestimonial hearsay from Confrontation Clause analysis altogether," and that decision relied on misquotation) (citing *People v. Conyers*, 4 Misc.3d 346, 777 N.Y.S.2d 274, 276 (Sup.Ct. 2004)); *State v. Martin*, 695 N.W.2d 578, 584 (Minn.2005) (noting that *Roberts* affords needed flexibility to states in development of hearsay law); *State v. Dedman*, 136 N.M. 561, 102 P.3d 628, 636 (2004) ("A close reading of *Crawford* indicates that *Roberts* still applies to non-testimonial hearsay evidence, though the Court appears split on whether it should."); *State v. Rivera*, 268 Conn. 351, 844 A.2d 191, 201 (2004) ("[N]ontestimonial hearsay statements may still be admitted as evidence against an accused in a criminal trial if it satisfies both prongs of the *Roberts* test . . . ."); *see also Demons v. State*, 277 Ga. 724, 595 S.E.2d 76, 80 (2004) (holding no confrontation deprivation because "indicia of reliability other than the opportunity for cross-examination . . . are constitutionally permissible considerations" where evidence nontestimonial).

Thus, the Supreme Court's holding in *Crawford* only extended to testimonial evidence; nontestimonial statements are still controlled by *Roberts*. *See Agostini v. Felton*, 521 U.S. 203, 238, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (" 'If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." ') (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)).

### C. The Victim's Statements Satisfy the *Roberts* Test

Since we hold that *Roberts* still governs the admission of nontestimonial statements, the victim's statements in this case must bear sufficient indicia of reliability to satisfy the federal Confrontation Clause. *E.g., Roberts*, 448 U.S. at 66, 100 S.Ct. 2531. To do so, the statements must fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." *Id.* An excited utterance is a firmly rooted hearsay exception. *White*, 502 U.S. at 356–57 & n. 8, 112 S.Ct. 736. Therefore, reliability is implied, and the declarant does not have to be unavailable. *Id.* at 354–57, 112 S.Ct. 736 (citing, *inter alia, United States v. Inadi*, 475 U.S. 387, 395–99, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)).

Petitioner contends the victim's statements are not "firmly rooted" excited utterances. Specifically, Petitioner argues the victim's course of conduct as she attempted to leave the restaurant she and Petitioner operated evidences a "fully operative" thought process weighing against reliability. We conclude otherwise.

An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2). Relevant here, the event or condition must be sufficiently startling to render normal reflective thought processes of the declarant inoperative, and the statement must be a spontaneous reaction to the event rather than the result of reflective thought. *E.g., Dement*, 661 P.2d at 678–79 (citing *McCormick's Handbook of the Law of Evidence* § 297, at 704 (Edward W. Cleary ed., 2d ed.1972) ).

While the temporal proximity of the statement to the startling event or condition is important, the two do not have to be contemporaneous if the declarant is still under stress when the statement is made. *E.g., People v. Lagunas*, 710 P.2d 1145, 1148 (Colo.App.1985). "What is of critical significance . . . is the spontaneous character of the statement and its natural effusion from a state of excitement." *Lancaster v. People*, 200 Colo. 448, 452–53, 615 P.2d 720, 723 (1980)). Several factors aid this inquiry: the lapse of time between the startling event or condition and the out-of-court statement; whether the statement was a response to an inquiry; whether the statement is accompanied by outward signs of excitement or emotional distress; and the declarant's choice of words to describe the startling event or con-

dition. *W.C.L. v. People,* 685 P.2d 176, 180 (Colo.1984) (citing cases).

■ Since "the trial court is in a preferred position to determine whether a particular event causes sufficient excitement in the declarant," it is afforded wide discretion "to render a statement admissible as an excited utterance." *People in Interest of O.E.P.,* 654 P.2d 312, 319 (Colo.1982); *e.g., People v. Martinez,* 83 P.3d 1174, 1177 (Colo.App. 2003).

Vargas testified the victim was upset, crying, and talking almost incomprehensibly during the first telephone call, which was made just after Petitioner started yelling at her. Although the victim's voice was more subdued during the second telephone call, made just after Petitioner assaulted her, Vargas did not perceive she was less excited. Indeed, Vargas testified that the victim sounded as if she could barely talk.

■ Thus, both telephone calls were made in near temporal proximity to the startling event—first Petitioner's yelling, and second the assault. *See W.C.L.,* 685 P.2d at 180. And, both calls were made by the victim; she initiated contact with Vargas. *See id.* Finally, the victim's demeanor showed significant outward signs of emotional distress. *See id.* All of these factors support the trial court's finding that the victim was reacting spontaneously to the stress of Petitioner's abusive behavior when she called Vargas. *See, e.g., Lagunas,* 710 P.2d at 1148; *see Lancaster,* 200 Colo. at 452–53, 615 P.2d at 723.

Furthermore, even though the victim's final and most incriminating statements were made at least fifteen minutes after the assault, Vargas testified that she found the victim upset, shaking, and nervous, and the victim was suffering pain in her abdomen. As Vargas gathered the victim's belongings, the victim kept looking back at Petitioner in the restaurant window. She wanted to hurry because she was afraid Petitioner might stop her from leaving. On the way to Vargas's house, the victim was biting her nails, shaking, and crying. Once they arrived, the victim continued crying and behaving in a visibly frightened manner.

Again, these outward signs of emotional distress demonstrate the victim still was reacting spontaneously to the stress of Petitioner's abusive behavior when she spoke to Vargas in her van and at her home. *See, e.g., Lagunas,* 710 P.2d at 1148; *see W.C.L.,* 685 P.2d at 180; *Lancaster,* 200 Colo. at 452–53, 615 P.2d at 723. In addition, the spontaneity of the victim's statements is further evidenced by the fact that she continued to initiate contact with Vargas even after calling for help: when Vargas arrived at the restaurant, the victim came to her and said, "I have to tell you what's been happening to me." *See, e.g., Lagunas,* 710 P.2d at 1148; *see W.C.L.,* 685 P.2d at 180; *Lancaster,* 200 Colo. at 452–53, 615 P.2d at 723.

For these reasons, we conclude the record supports the trial court's holding that the victim's statements were excited utterances. Petitioner's domestic abuse was sufficiently startling to render the victim's normal thought processes inoperative, and the victim's statements were spontaneous reactions to Petitioner's domestic abuse, not the product of reflective thought. *See Dement,* 661 P.2d at 678–79.

Nonetheless, Petitioner contends that *People v. Koon,* 724 P.2d 1367 (Colo.App.1986), is factually analogous and application of its reasoning would require reversal. In *Koon,* the alleged victim wrote in her diary that her stepfather sexually abused her. *Id.* at 1373. A friend's mother read the diary and decided to get the stepdaughter out of the house. *Id.* The mother went to the stepdaughter's house, and finding her "very upset," tried to persuade her to leave. *Id.* The stepdaughter asked her stepfather for permission, but he refused because he needed her to watch the family's younger children. *Id.* The friend's mother then approached the stepfather, and under the pretext of a surprise party, convinced him to allow the stepdaughter to leave under her supervision. *Id.* Once outside the house, the stepdaughter exclaimed, "I can't go back there because he is going to do it again . . . ." *Id.*

The trial court admitted this statement as an excited utterance. *Id.* The court of appeals reversed, concluding the stepdaughter's premeditated plan to leave her house demon-

strated her statement was not a spontaneous reaction to a sufficiently startling event:

> Although the stepdaughter may have been excited at the prospect of leaving the home, we conclude that the statement ... was not in response to a startling event or occurrence within the meaning of CRE 803(2). Here, the nature of the occurrence was not such as to render thought processes inoperative. Instead, the thought processes of both the stepdaughter and [the friend's mother] were fully operative in devising a way to get the stepdaughter out of the house without defendant becoming suspicious as to the reason. Under these circumstances, there was no "condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication."

*Id.* (quoting *People in Interest of O.E.P.,* 654 P.2d at 317).

We find the situation in *Koon* very different from the circumstances in the present case. Here, the victim had just been assaulted; in *Koon,* the alleged assault had taken place at some past time, distant enough that the stepdaughter had written about it in her diary. *See, e.g., Lagunas,* 710 P.2d at 1148; *W.C.L.,* 685 P.2d at 180. And, unlike the stepdaughter in *Koon,* the victim here initiated her escape immediately after the startling event; she did not wait for Vargas to show up and take her away. Moreover, in *Koon,* the only evidence of the stepdaughter's stress was the friend's mother's testimony that the stepdaughter was very upset. Here, Vargas testified in great detail about the victim's demeanor, appearance, and statements. These outward signs of emotional distress, absent in *Koon,* demonstrate the spontaneity of the victim's statements and their effusion from a state of excitement. *See, e.g., Lagunas,* 710 P.2d at 1148; *see W.C.L.,* 685 P.2d at 180; *Lancaster,* 200 Colo. at 452–53, 615 P.2d at 723.

In summary, we find no abuse of discretion. The trial court properly admitted the victim's statements as excited utterances. Since the hearsay exception for such spontaneous declarations is firmly rooted, the victim's statements have sufficient guarantees of reliability to satisfy the Sixth Amendment, without regard to the victim's unavailability. *See, e.g., Roberts,* 448 U.S. at 66, 100 S.Ct. 2531; *see White,* 502 U.S. at 354–57, 112 S.Ct. 736. Applying *Roberts,* we hold Petitioner was not deprived his federal right to confront the witnesses against him.

## D. The Colorado Confrontation Clause Does Not Bar the Victim's Nontestimonial Statements

■ Petitioner further argues that the Colorado Constitution bars admission of the victim's statements because the prosecution did not meet its burden under *Dement* of showing the victim unavailable to testify at trial. In contrast, the People contend unavailability should no longer be required in light of the United States Supreme Court's abandonment of the requirement when hearsay falls within a firmly rooted exception. Without reaching this latter issue, we conclude that the record demonstrates the victim was unavailable to testify at trial. Accordingly, Petitioner's state constitutional right to confront the witnesses against him was not infringed.

As discussed above, we adopted *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, in *People v. Dement,* holding that the federal requirements of witness unavailability and evidence reliability were the appropriate analysis under the Colorado Confrontation Clause. 661 P.2d at 680. Moreover, in *People v. Fry,* 92 P.3d 970 (Colo.2004), we also adopted the federal standard from *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, holding that the admission of testimonial hearsay at trial, absent the unavailability of the declarant and a prior opportunity for cross-examination by the defendant, violates the accused's confrontation right under the Colorado Constitution. *Fry,* 92 P.3d at 976.

By rejecting the reliability requirement, *Fry* expressly overruled *Dement.* *Fry,* 92 P.3d at 976. However, like *Crawford,* our holding was limited to testimonial statements; nontestimonial statements were not at issue in *Fry.* *See id.* at 976, 979–80 (holding declarant's statements at preliminary hearing were testimonial and therefore not violative of the Colorado Confrontation

Clause because declarant was unavailable at trial and defendant had no prior opportunity to cross-examine); *see also Garrison*, 109 P.3d at 1013 ("[W]e do not read *Fry* to reject the *Roberts–Dement* reliability analysis with respect to *nontestimonial* evidence."), *cert. denied*, No. 04SC733, 2005 WL 878563 (Colo. April 18, 2005).

■ Consequently, *Dement* still instructs whether the admission of nontestimonial statements offends the Colorado Confrontation Clause: to admit nontestimonial evidence when the defendant has not had a prior opportunity of cross-examination, the prosecution must show that the declarant is unavailable and the statement bears sufficient indicia of reliability. *Dement*, 661 P.2d at 679–81 (citing *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531).[3]

Turning then to *Dement*'s first requirement, "[u]navailability 'in the constitutional sense' is established by the prosecution when good faith, reasonable efforts have been made to produce the witness without success." *Dement*, 661 P.2d at 681 (citing *Roberts*, 448 U.S. at 74–75, 100 S.Ct. 2531).

Here, the record shows the prosecution made reasonable, good faith efforts to locate the victim and produce her at trial. The victim provided Vargas's address to the authorities, and it was at that location that the police and the district attorney's office attempted to contact her. After Vargas signed a certified letter receipt and neither she nor the victim contacted the district attorney's office, a police detective made two unsuccessful attempts to contact the victim through Vargas. Furthermore, when the victim appeared at the district attorney's office several months later, she did not provide a specific address or telephone number at which she could be contacted. When the victim failed to return for a scheduled appointment, and still could not be located through Vargas, the prosecution sought a continuance for addi-

tional time to locate her, albeit unsuccessfully.

In summary, we hold the prosecution met its burden under *Dement* to show the victim was unavailable to testify at trial, despite its reasonable, good faith efforts. *See* 661 P.2d at 680–81. As for *Dement*'s second requirement, reliability, we already have concluded that the victim's statements were properly admitted as excited utterances, which fall within a firmly rooted hearsay exception. *See supra* Part II.C. Therefore, the victim's statements implicitly bear sufficient indicia of reliability, and we conclude Petitioner was not deprived his state constitutional right to confront the witnesses against him face to face.

Finally, Petitioner contends admission of the unavailable victim's reliable statements deprived him of his state constitutional right literally to confront her face to face at trial. In essence, Petitioner asks us to overrule our congruent precedent, and interpret the state Confrontation Clause to protect a broader range of rights than does the Sixth Amendment to the United States Constitution. We already have rejected this position and decline to revisit it.

Colorado's Confrontation Clause is phrased similarly to its federal counterpart. *Compare* Colo. Const. art. II, § 16 ("In all criminal prosecutions, the accused shall have the right . . . to meet the witnesses against him face to face."), *with* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). However, as Petitioner declares, this similarity "does not abrogate our responsibility to engage in an independent analysis of state constitutional principles in resolving a state constitutional question." *People v. Young*, 814 P.2d 834, 842 (Colo.1991).

Concerning the Colorado Constitution's Confrontation Clause, we already have undertaken this independent analysis. Indeed,

---

3. Although the United States Supreme Court no longer requires unavailability when nontestimonial evidence falls within a firmly rooted hearsay exception, *see White*, 502 U.S. at 354–57, 112 S.Ct. 736, we have continued to do so, *see Blecha*, 962 P.2d at 941 (applying *Dement*'s unavailability prong, but emphasizing no judgment made on whether still required under Colorado Constitution in light of recent federal abandonment). We need not revisit the unavailability requirement here because the prosecution clearly met its burden of establishing the victim's unavailability to testify at trial.

our recent decisions evidence a reasoned attempt to "maintain consistency between Colorado law and federal law." *Blecha,* 962 P.2d at 941. In *Dement,* for example, we explained that *Roberts* and other federal confrontation cases interpreting the Sixth Amendment are instructive because they protect the same underlying constitutional "purposes of face-to-face confrontation and require either the presence of adverse witnesses for cross-examination or, in appropriate cases, an equivalent substitute in keeping with the purposes and objectives of cross-examination." *Dement,* 661 P.2d at 680.[4]

Importantly, in *Dement* we expressly rejected holding excited utterances unconstitutional in all criminal cases. *Id.* We explained such a bright-line rule, though efficient, "would unduly favor criminal defendants and, in many cases, undermine the truth-seeking process." *Id.* In our view, the dual requirements of unavailability and reliability sufficiently protected the Colorado Confrontation Clause's "underlying purposes of face-to-face confrontation and cross-examination" in cases involving a declarant's excited utterances. *Id.* at 681.

Although no longer applicable to testimonial evidence, our holding in *Dement* retains vitality to nontestimonial statements such as the excited utterances at issue in the present case. Likewise, the independent constitutional reasoning its holding was based upon is still sound, and Petitioner presents no compelling reason for us to revisit it.

## III. Conclusion

For the reasons stated above, we reject Petitioner's constitutional challenges to his conviction for third-degree assault. *Crawford* only applies to testimonial statements, and the victim's statements are not testimonial. As a result, *Crawford* does not require Petitioner to have had a prior opportunity to cross-examine the victim, and *Roberts* still governs the federal constitutional scrutiny of the victim's statements. Here, the trial court did not abuse its broad discretion in admitting the victim's statements as excited utterances. Since an excited utterance is a firmly rooted hearsay exception, there are sufficient indicia of the statements' reliability. Accordingly, Petitioner's federal constitutional right to confront the witnesses against him was not infringed.

In addition, Petitioner has not been deprived of his right under the Colorado Confrontation Clause to confront the witnesses against him face to face. The victim's statements are nontestimonial, and therefore, *Dement* still governs their admission. Here, the prosecution met its burden of showing that the victim was unavailable to testify at trial, despite its reasonable, good faith efforts, and that the statements, as firmly rooted excited utterances, bear sufficient indicia of reliability. Thus, we affirm Petitioner's conviction.

Justice COATS specially concurs and Justice KOURLIS joins in the special concurrence.

Justice COATS, specially concurring.

While I agree that the victim's out-of-court statements at issue in this case were not testimonial; that they fell within the firmly rooted, excited utterance exception to the hearsay rule; and that they were not admitted in violation of either the state or federal confrontation clause; I write separately to express in my own terms the state of the law in this jurisdiction concerning the admissibility of non-testimonial hearsay. Although I do not believe my view differs significantly from that expressed in today's opinion by the court, I do believe that nuance of expression can lead to significantly different understandings (and therefore applications) of the law, especially in a context like this.

The immediate problem arises from the Supreme Court's reinterpretation of the Confrontation Clause in *Crawford v. Washing-*

---

4. Moreover, when the United States Supreme Court in *Crawford* decided the only indicia of reliability sufficient for testimonial evidence was cross-examination, we continued our effort at congruency between the federal and state Confrontation Clauses, adopting *Crawford*'s new approach in *Fry,* 92 P.3d at 976. *See also People v. Newbrough,* 803 P.2d 155, 160 n. 10 (Colo.1990) (holding analysis of federal right to confront child witness's videotaped deposition "applies with equal force to the confrontation right under the Colorado Constitution.").

ton, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), as requiring an actual opportunity to confront (when it is applicable at all), rather than merely expressing a concern for reliability. The *Crawford* Court openly acknowledges that its holding "casts doubt" on the applicability of the Confrontation Clause to other than "testimonial" hearsay, but it also expressly reserves judgment on the survival of its holding to the contrary in *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). *Crawford*, 541 U.S. at 61, 124 S.Ct. 1354. While lower courts are bound not only by the results of the Supreme Court's opinions but also by those portions of its opinions necessary to those results, *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 63, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), it remains the prerogative of the Supreme Court alone to overrule one of its precedents; and, as we note in today's opinion, its precedents must therefore continue to be followed, even if they have been significantly undermined by subsequent changes in judicial doctrine, *see State Oil Co. v. Khan*, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997); *United States v. Hatter*, 532 U.S. 557, 567, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001). Nevertheless, I am concerned by the suggestion that *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), "continues to govern federal constitutional scrutiny on non-testimonial evidence," maj. op. at 881, not because of anything first appearing in *Crawford*, but rather because of the Supreme Court's narrowing interpretations of *Roberts*, even before *Crawford*.

We, along with other jurisdictions, initially understood *Roberts* as construing the Confrontation Clause to limit the admissibility of hearsay statements to circumstances in which the statements bore sufficient indicia of reliability and the declarant was unavailable to testify. *See People v. Dement*, 661 P.2d 675 (Colo.1983). In at least two separate cases (and in increasingly explicit terms), the Supreme Court disabused us of that notion, making clear that it never intended *Roberts* to be understood so broadly and holding instead that *Roberts* "must be read consistently with the question it answered, the authority it cited, and its own facts." *White*, 502 U.S. at 354, 112 S.Ct. 736

(*quoting United States v. Inadi*, 475 U.S. 387, 394, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)). *Roberts*, of course, involved "testimonial," rather than "non-testimonial," hearsay, and more specifically, only the admissibility of prior recorded testimony. *Roberts*, 448 U.S. at 59, 100 S.Ct. 2531. So understood (the Court instructed us), *Roberts* stood for the proposition that unavailability "is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding." *White*, 502 U.S at 354, 112 S.Ct. 736.

Long before its holding in *Crawford*, therefore, the Supreme Court had "clarified the scope of *Roberts*," *id.* at 354, 112 S.Ct. 736, limiting its holding to prior recorded testimony. Without ever using the term, the Court in *Crawford* flatly overruled the holding of *Roberts*, deciding both that the Confrontation Clause requires an actual opportunity to cross-examine before permitting the admission of any statements to which it applies, and that it applies at least to testimonial statements, the only kind of statements within the narrowed scope of the *Roberts* holding. *See Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. In *Crawford*, the Supreme Court therefore did not withhold judgment about the continued vitality of *Roberts*; it merely withheld judgment about the survival of *White*'s holding that the Confrontation Clause applies to other-than testimonial statements. *Id.* at 61, 124 S.Ct. 1354.

Relying solely on pre-*Roberts* pronouncements, the Court in *White*, as it had done in *Roberts*, analyzed the "reliability requirement of the Confrontation Clause" in terms of "sufficient indicia of reliability," *White*, 502 U.S. at 356 n. 8, 112 S.Ct. 736, ultimately holding that "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied," *id.* at 356, 112 S.Ct. 736. In so doing, *White* separately gave validity to the same kind of reliability analysis applied in *Roberts*, but only so far as to justify out-of-court statements pursuant to "firmly rooted" hearsay exceptions. Although it is the inescapable implication of *Crawford* that the Con-

frontation Clause cannot both govern non-testimonial hearsay and permit its admission without an opportunity for cross-examination, *Crawford* clearly intends that firmly rooted hearsay exceptions remain unaffected by the Confrontation Clause, either because it is inapplicable altogether or because it is automatically satisfied; and at least for the time being, it therefore leaves the holding of *White* undisturbed. *See Crawford*, 541 U.S. at 61, 124 S.Ct. 1354.

Unlike a number of courts already considering the matter, I would be cautious about interpreting too broadly the Supreme Court's reference to *Roberts* in connection with "the Framers' design to afford the States flexibility in their development of hearsay law." *Id.*

at 68, 100 S.Ct. 2531.[1] Apart from the fact that non-testimonial hearsay has never been governed by *Roberts*, the oft-quoted passage, *see* maj. op. at 881, clearly refers only to "developments" in hearsay law, as distinguished from "firmly rooted" exceptions. In context, it stands merely for the proposition that unlike testimonial hearsay, the admissibility of which is constitutionally limited by availability and a prior opportunity for cross-examination, the development of exceptions for non-testimonial hearsay could remain flexible, as intended by the Framers, either by permitting courts to search for sufficient indicia of reliability, the approach typified by *Roberts*, or by finding such statements exempt from Confrontation Clause scrutiny altogether. Having exhaustively disparaged,

1. Although many courts have stated that *Roberts* continues to apply to non-testimonial statements, as we note in today's opinion, the picture may be somewhat more ambiguous that this observation suggests. Many of the courts adopting such a position do so in reliance on other courts, virtually without clarification or explanation. *See, e.g., United States v. Brun*, 416 F.3d 703, 706–07 (8th Cir.2005)(holding that nontestimonial statements were properly admitted under *Roberts* after finding the First Circuit's application of *Roberts* to nontestimonial statements persuasive (citing *Horton v. Allen*, 370 F.3d 75 (1st Cir.2004)); *Horton*, 370 F.3d 75, 83 (quoting "flexibility" passage from *Crawford* and summarily concluding: "unless [defendant's] statements qualify as 'testimonial,' *Crawford* is inapplicable and *Roberts* continues to apply."); *State v. Rivera*, 268 Conn. 351, 844 A.2d 191, 201 (2004)(quoting "flexibility" passage, and summarily concluding: "In other words, nontestimonial hearsay statements may still be admitted as evidence against an accused in a criminal trial if it satisfies both prongs of the *Roberts* test...."); *State v. Martin*, 695 N.W.2d 578, 584 (Minn.2005)(noting in dicta that the Supreme Court "announced a new test for admissibility of those statements that are testimonial, but left the *Roberts* test in place for nontestimonial statements....").

Of those courts actually addressing the issue, some are equivocal, relying simply on the failure of *Crawford* to expressly overrule *Roberts*. *See, e.g., United States v. Holmes*, 406 F.3d 337, 348 n. 14 (5th Cir.2005)(noting that *Crawford* left open the possibility of exempting nontestimonial statements from Confrontation Clause scrutiny, but concluding the *Roberts* test endured because the Court declined to overrule *White*); *United States v. Hendricks*, 395 F.3d 173, 179 n. 7 (3d Cir.2005)(noting that commentators interpreted *Crawford* to foretell the Court's future abrogation of the *Roberts* reliability analysis, thus excluding nontestimonial hearsay from Confrontation

Clause scrutiny, but nevertheless applying *Roberts* because "such a development in Sixth Amendment jurisprudence is beyond the province of this court."); *United States v. Saget*, 377 F.3d 223, 227 (2d Cir.2004)(discussing *Crawford's* disparagement of *Roberts*, and concluding: "while the continued viability of *Roberts* with respect to nontestimonial statements is somewhat in doubt, we will assume for purposes of this opinion that its reliability analysis continues to apply to control nontestimonial hearsay....").

Finally, a number of courts have flatly held that *Roberts* does not control the admission of non-testimonial statements. *See, e.g., State v. Carter*, [326 Mont. 427,] 114 P.3d 1001, 1007 (Mont.2005)(affirming the admission of nontestimonial statements based solely on applicable hearsay law after observing that *Crawford* afforded states "flexibility in forming their hearsay law, and [nontestimonial] evidence may be exempted from Confrontation Clause scrutiny."); *State v. Wright*, 701 N.W.2d 802, 809, 811 (Minn.2005)(holding that the admission of nontestimonial statements "did not violate [defendant's] Confrontation Clause rights under *Crawford*" because "when nontestimonial hearsay is at issue, states are permitted to exempt such statements from Confrontation Clause scrutiny as they see fit."); *Commonwealth v. Gonsalves*, [445 Mass. 1, 833 N.E.2d 549,] 2005 WL 2046000 (Mass.2005)(observing that after Crawford, "[t]he admissibility of nontestimonial out-of-court statements remains governed largely by State hearsay rules," and holding that "[i]f a judge finds an out-of-court statement is not testimonial, then the Commonwealth's rules of evidence alone govern admissibility....").

Interestingly, virtually none of the courts indicating a position one way or the other have actually excluded nontestimonial statements for failing to meet the test of *Roberts*. *But see, Miller v. State*, 98 P.3d 738 (Ok.[Crim.]Ct.App.2005).

in the immediately preceding paragraphs, the "open-ended balancing tests" already applied by courts in the context of testimonial hearsay, the Court leaves little doubt, however, about the dangers it sees in the former approach, whether mandated by constitution or prescribed by state legislatures.

I count it no great sin to use the name "*Roberts*" (as apparently even the Supreme Court does) as shorthand for an interpretation of the Confrontation Clause requiring indicia of reliability, as distinguished from guarantying a particular procedure to ensure reliability. I am concerned, however, that portions of today's opinion may be read to suggest that the holding of *Roberts* once was, and continues to be, broad enough to govern the admissibility of non-testimonial hearsay. I would find such a proposition particularly insidious in this jurisdiction, where it risks appearing to extend vitality to our former misinterpretations of *Roberts*.

In *Dement*, we understood *Roberts* to announce a Sixth Amendment mandate that all hearsay be subject to the two-prong requirement of unavailability and sufficient indicia of reliability. Although that case came to us from a ruling on the state constitution, we went out of our way to acknowledge the similarities in both the roots and prior constructions of the federal and state constitutional provisions, making clear that our interpretation of the state confrontation clause was guided by the Supreme Court's interpretation of the federal confrontation clause. After *Inadi*, "we continued to apply the two-step test in an effort to follow federal constitutional law," making clear, however, that "we reach[ed] no decision on whether the two-part test articulated in *Dement* retain[ed] its vitality in light of Supreme Court decisions." *Blecha v. People*, 962 P.2d 931, 941 (Colo.1998); *People v. Diefenderfer*, 784 P.2d 741, 747 (Colo.1989)(finding the *Roberts*, two-prong test still applicable to nontraditional, not "firmly rooted" exceptions). In those cases we reemphasized that this test was adopted in *Dement* "[i]n an effort to maintain consistency between Colorado law and federal law," *Blecha*, 962 P.2d at 941, rather than as an independent interpretation of the state constitutional provision in contra-

distinction to the federal confrontation clause.

While the court's opinion in this case clearly reserves judgment about a separate state requirement of unavailability, I am concerned that it not be read to suggest the current existence of any independent construction of the state confrontation clause, mandating a showing of unavailability for non-testimonial hearsay unless or until it is overruled by this court. *But see People v. Compan*, 100 P.3d 533 (Colo.App.2004); *People v. Green*, 884 P.2d 339 (Colo.App.1994). As we have consistently made clear, and note again in our opinion today, we have always construed the state confrontation clause to be consistent with the Sixth Amendment. *Dement* adopted the two-prong test only because, and to the extent that, it considered that test mandated by the federal constitution. *Dement*, 661 P.2d at 679–80. After the Supreme Court's holding in *White*, it is clear that the unavailability analysis of *Roberts* was intended to apply only to "out-of-court statements [ ] made in the course of a prior judicial proceeding," *White*, 502 U.S. at 354, 112 S.Ct. 736; and *Crawford* extends the Confrontation Clause concern for unavailability only as far as all other testimonial hearsay.

Should a trial court in this jurisdiction be faced with an objection, on state constitutional grounds, to an offer of the non-testimonial hearsay statements of an available declarant, it would be required to determine, as matter of first impression and without the constraint of any existing precedent, the scope of the unavailability requirement in the state constitution. It therefore continues to be necessary, as we make clear, to determine whether offered hearsay is non-testimonial and, at least in the context of state constitutional challenges, whether a declarant of non-testimonial hearsay is unavailable. Because the holding of *White* survives *Crawford*, at least for the time being, it is also essential to determine whether non-testimonial hearsay falls within a firmly rooted hearsay exception.

When courts are faced, however, with the admissibility of non-testimonial hearsay that does not fall within any firmly rooted excep-

tion, a question not before us today, I fear they will find no safe harbor in even a *Roberts*-style search for indicia of reliability, and will be forced to assess whether the Confrontation Clause is applicable to this class of statements at all, and if so, the demands of confrontation in this context.

I am authorized to state that Justice KOURLIS joins in this special concurrence.